STROUD, Judge.
 

 *740
 
 This is now the third time this appeal has been considered by this Court. To briefly recap, defendant Thomas Craig Campbell ("defendant") appealed from a judgment entered on a jury verdict finding him guilty of breaking or entering a place of religious worship with intent to commit a larceny therein and larceny after breaking or entering. Defendant raised six issues in his appeal, arguing that (1) the indictment for larceny was fatally defective because it failed to allege that Manna Baptist Church
 
 *741
 
 was an entity capable of owning property; (2) insufficient evidence supports his conviction for breaking or entering a place of religious worship with intent to commit a larceny therein; (3) he was deprived of effective assistance of counsel, because his counsel failed to object to the admission of evidence that defendant had committed a separate breaking or entering offense; (4) the trial court erred in failing to dismiss the larceny charge due to a fatal variance as to the ownership of the property; (5) insufficient evidence supports his larceny conviction; and (6) the trial court violated his constitutional right to a unanimous jury verdict regarding the larceny charge.
 

 Issues (1) and (2) were addressed in our first opinion and the Supreme Court's reversal of that decision on discretionary review.
 
 State v. Campbell
 
 ,
 
 234 N.C.App. 551
 
 ,
 
 759 S.E.2d 380
 
 (2014) ("
 
 Campbell COA I
 
 "),
 
 rev'd and remanded
 
 ,
 
 368 N.C. 83
 
 ,
 
 772 S.E.2d 440
 
 (2015) ("
 
 Campbell SC I
 
 "). On remand, in our second unanimous opinion, this Court disagreed with defendant on Issue (3) but agreed with defendant on Issue (4).
 
 State v. Campbell
 
 ,
 
 243 N.C.App. 563
 
 ,
 
 777 S.E.2d 525
 
 (2015) ("
 
 Campbell COA II
 
 "),
 
 review allowed in part
 
 ,
 
 368 N.C. 904
 
 ,
 
 794 S.E.2d 800
 
 (2016) ("
 
 Campbell SC review of COA II allowed
 
 "),
 
 and rev'd and remanded
 
 ,
 
 369 N.C. 599
 
 ,
 
 799 S.E.2d 600
 
 (2017) ("
 
 Campbell SC II
 
 "). On discretionary review, the Supreme Court once again remanded the matter to this Court, not on any substantive grounds but rather "for an independent assessment of whether that court need and should invoke its discretion under Rule 2 of the North Carolina Rules of Appellate Procedure in order to reach the merits of one of defendant's substantive issues on appeal."
 
 Campbell SC II
 
 ,
 
 369 N.C. 599
 
 ,
 
 799 S.E.2d at 601
 
 .
 

 In this opinion, as the Supreme Court directed, we reiterate why we have once again chosen to invoke our discretion under Rule 2 to address defendant's arguments regarding Issue (4). In invoking our discretion under Rule 2 to reach the merits of defendant's arguments regarding Issue (4), we hold that the trial court erred in failing to dismiss the larceny charge due to a fatal variance between the indictment and evidence regarding ownership of the missing property. We also address Issues (5) and (6) in the interest of judicial economy.
 

 I. Background
 

 i. Factual Background
 

 Because the Supreme Court remanded the matter to this Court on procedural grounds and no additional factual background is needed, we directly quote the underlying facts as stated in our prior opinions:
 

 *742
 
 On 8 October 2012, defendant was indicted for breaking or entering a place of religious worship and larceny after breaking
 
 *806
 
 or entering. The larceny indictment alleged that on 15 August 2012 defendant "willfully and feloniously did steal, take, and carry away a music receiver, microphones, and sounds [sic] system wires, the personal property of Andy [Stevens] and Manna Baptist Church, pursuant to a breaking or entering in violation of N.C.G.S. 14-54.1(a)." Defendant pled not guilty and proceeded to jury trial.
 

 At trial, the State's evidence tended to show that Pastor Andy [Stevens] of Manna Baptist Church, located on Burke Road in Shelby, North Carolina, discovered after Sunday services on 19 August 2012 that a receiver, several microphones, and audio cords were missing. The cords were usually located at the front of the church, by the sound system, or in the baptistery changing area. It appeared that the sound system had been opened up and items inside had been moved around. Pastor [Stevens] found a wallet in the baptistery changing area that contained a driver's license belonging to defendant.
 

 Pastor [Stevens] testified that when the church secretary arrived on Thursday morning earlier that week, she had noticed that the door was unlocked. She assumed that it had been left unlocked after Wednesday night services, which had ended around 9 p.m. Although the front door is normally locked at night, on cross-examination, Pastor [Stevens] admitted that the church door had been left unlocked overnight before. Pastor [Stevens] said that the secretary did not notice anything amiss on Thursday morning.
 

 After Pastor [Stevens] realized that the audio equipment was missing he called the Cleveland County Sheriff's Office. Deputy Jordan Bowen responded to the scene. The deputy examined the premises but found no signs of forced entry. He recovered defendant's wallet from the pastor.
 

 Investigator Jessica Woosley went to speak with defendant at the Cleveland County Detention Center, where he was being held on an unrelated breaking or entering charge. When Investigator Woosley introduced herself, defendant said, "[T]his can't possibly be good. What have
 
 *743
 
 I done now that I don't remember?" Investigator Woosley read defendant his
 
 Miranda
 
 rights and defendant invoked his right to counsel. Investigator Woosley tried to end the interview, but defendant continued talking.
 

 Defendant admitted that he had been to Manna Baptist Church on the night in question, but stated that he could not remember what he had done there. He explained that he had mental issues and blacked out at times. Defendant claimed to be a religious man who had been "on a spiritual journey." He said that he remembered the door to the church being open, but that he did not remember doing anything wrong.
 

 After speaking with defendant, Investigator Woosley searched through a pawn shop database for any transactions involving items matching those missing from the church but did not find anything. The missing items were never recovered.
 

 At the close of the State's evidence, defendant moved to dismiss the charges. The trial court denied the motion. Defendant then elected to present evidence and testify on his own behalf. Defendant testified that he was a [fifty-one-year-old] man with a high school education and one semester of college. He said that on 15 August 2012, he had been asked to leave the home he was living in, so he packed his possessions in a duffel bag and left. He started walking toward a friend's house but dropped the bag in a ditch because it was too heavy to carry long-distance.
 

 Around midnight, defendant arrived at his friend's house, but his friend's girlfriend asked him to leave, so he did. Defendant continued walking down the road until he came upon the church. He noticed that the door was cracked slightly and a "sliver of light" was emanating from within. Defendant explained that after all his walking, he was thirsty and tired, so he went into the church looking for water and sanctuary. He said that while he was inside, he got some water, prayed, and slept. He claimed that he did not intend to take anything and did not take anything when he left around daybreak.
 

 *807
 
 After leaving the church, defendant began walking down the road again. He soon began having chest pains
 
 *744
 
 and called 911. Defendant explained that he was on a variety of medications at the time, including powerful psychotropic medication. An ambulance arrived and took him to Cleveland Memorial Hospital.
 

 Calvin Cobb, the Emergency Medical Technician (EMT) who responded to defendant's call, also testified on defendant's behalf. Mr. Cobb said that they received a dispatch call around 6:30 a.m. When they arrived at the intersection of Burke Road and River Hill Road, they saw defendant near an open field, sitting on the back of a fire truck that had been first to respond. Defendant told Mr. Cobb that he had been wandering all night. Mr. Cobb noticed that defendant looked disheveled and worn out, and that defendant had worn through the soles of his shoes. Mr. Cobb did not see defendant carrying anything and did not find anything in his pockets.
 

 After defendant rested his case, the State called another officer in rebuttal. The State wanted to offer his testimony regarding defendant's prior breaking or entering arrest. The trial court asked the State to explain the relevance of the prior incident. The State argued that it contradicted part of defendant's testimony regarding what happened before he got to the church, but did not elaborate on how it contradicted defendant's testimony and did not otherwise explain its relevance. The trial court excluded the rebuttal testimony under [ North Carolina Rule of Evidence 403 ]. At the close of all the evidence, defendant renewed his motion to dismiss all charges, which the trial court again denied.
 

 The jury found defendant guilty of both charges. The trial court consolidated the charges for judgment and sentenced defendant to a split sentence of 13-25 months [of] imprisonment, suspended for 24 months of supervised probation, and an active term of 140 days in jail. Defendant gave timely written notice of appeal.
 

 Campbell COA II
 
 ,
 
 243 N.C.App. 563
 
 ,
 
 777 S.E.2d at 527-28
 
 (quoting
 
 Campbell COA I
 
 ,
 
 234 N.C.App. at 552-55
 
 ,
 
 759 S.E.2d at 382-83
 
 (first alteration in original) ).
 

 *745
 
 ii. Procedural Background on Remand
 

 We first note that this Court has not requested new briefs since this case was originally heard on 7 May 2014. New briefs were filed both times this case was considered by our Supreme Court. Defendant and the State jointly filed a motion with this Court to consider the Supreme Court briefs on remand or to allow supplemental briefing. Because the Supreme Court briefs and prior briefs with this Court sufficiently address the issues at hand, we have granted the motion in part, to consider the Supreme Court briefs, and denied in part as to supplemental briefing.
 

 As noted above, this is the third time this appeal has been considered by this Court. After this Court's opinion in the first appeal,
 
 Campbell COA I
 
 , the Supreme Court on discretionary review overruled a line of cases from this Court which in the first opinion we had been required to follow:
 

 [We] hold that alleging ownership of property in an entity identified as a church or other place of religious worship, like identifying an entity as a "company" or "incorporated," signifies an entity capable of owning property, and the line of cases from the Court of Appeals that has held otherwise is overruled.
 
 See, e.g.,
 

 State v. Patterson
 
 ,
 
 194 N.C.App. 608
 
 , 614,
 
 671 S.E.2d 357
 
 , 361 (holding that indictment naming "First Baptist Church of Robbinsville" was fatally defective),
 
 disc. rev. denied
 
 ,
 
 363 N.C. 587
 
 ,
 
 683 S.E.2d 383
 
 (2009) ;
 
 State v. Cathey
 
 ,
 
 162 N.C.App. 350
 
 , 353-54,
 
 590 S.E.2d 408
 
 , 410-11 (2004) (holding that indictment naming "Faith Temple Church of God" was fatally defective). Accordingly, the larceny indictment here is valid on its face even though it does not specify that Manna Baptist Church is an entity capable of owning property, and the Court of Appeals erred in vacating defendant's conviction for larceny on that basis.
 

 Campbell SC I
 
 , 368 N.C. at 87,
 
 772 S.E.2d at 444
 
 .
 

 The Supreme Court therefore reversed this Court's first opinion and
 

 *808
 
 held that (1) the larceny indictment was valid on its face even though it did not specify that Manna Baptist Church was an entity capable of owning property; and (2) sufficient evidence supported defendant's conviction for breaking or entering a place of religious worship with intent to commit a larceny therein.
 

 *746
 

 State v. Campbell
 
 ,
 
 368 N.C. 83
 
 , ----,
 
 772 S.E.2d 440
 
 , 444-45 (2015). The North Carolina Supreme Court remanded the case to this Court for consideration of any remaining issues.
 
 See
 

 id
 
 . at ----,
 
 772 S.E.2d at 445
 
 .
 

 Campbell COA II
 
 ,
 
 243 N.C.App. 563
 
 ,
 
 777 S.E.2d at 526-27
 
 .
 

 Defendant originally raised six issues on appeal, and the Supreme Court's first opinion resolved defendant's first two issues. Thus, on remand to this Court "for consideration of any remaining issues on appeal[,]"
 
 Campbell SC I
 
 , 368 N.C. at 88,
 
 772 S.E.2d at 445
 
 , we noted defendant's remaining Issues (3), (4), (5), and (6). On these issues,
 

 Defendant contends ... (3) he was deprived of effective assistance of counsel, because his counsel failed to object to the admission of evidence that defendant had committed a separate breaking or entering offense; (4) the trial court erred in failing to dismiss the larceny charge due to a fatal variance as to the ownership of the property; (5) insufficient evidence supports his larceny conviction; and (6) the trial court violated his constitutional right to a unanimous jury verdict with respect to the larceny charge.
 

 Campbell COA II
 
 ,
 
 243 N.C. App. 563
 
 ,
 
 777 S.E.2d at 526
 
 .
 

 In
 
 Campbell COA II
 
 , we determined that defendant had not shown ineffective assistance of counsel, resolving Issue (3).
 
 Id
 
 . at 570-71,
 
 777 S.E.2d at 530
 
 . We decided, in our discretion, to allow review under Rule 2 of Issue (4), and in accord with
 
 State v. Greene
 
 ,
 
 289 N.C. 578
 
 ,
 
 223 S.E.2d 365
 
 (1976), and
 
 State v. Hill
 
 ,
 
 79 N.C. 656
 
 (1878), we held that "a fatal variance exists because the evidence showed that the stolen property belonged to the church only."
 
 Campbell COA II
 
 ,
 
 243 N.C.App. 563
 
 ,
 
 777 S.E.2d at 534
 
 . We therefore vacated defendant's conviction for larceny.
 

 Id.
 

 at 577-78
 
 ,
 
 777 S.E.2d at 534
 
 . Because of our ruling on Issue (4), we did not address Issues (5) and (6).
 

 Once again, the Supreme Court granted discretionary review, but only "as to whether the Court of Appeals erred in invoking Rule 2 of the North Carolina Rules of Appellate Procedure under the circumstances of this case."
 
 Campbell SC review of COA II allowed
 
 , 368 N.C. at 904,
 
 794 S.E.2d at 800
 
 . In its second opinion, the Supreme Court did not address the substantive issues, but remanded for this Court to "independently and expressly determine whether, on the facts and under the circumstances of this specific case, to exercise its discretion to employ Rule 2 of the North Carolina Rules of Appellate Procedure, suspend Rule 10(a)(1), and consider the merits of defendant's fatal variance
 
 *747
 
 argument."
 
 Campbell SC II
 
 ,
 
 369 N.C. 599
 
 ,
 
 799 S.E.2d at 603
 
 . The Supreme Court stated:
 

 Here, the Court of Appeals did not reach the merits of defendant's fatal variance argument after an independent determination of whether the specific circumstances of defendant's case warranted invocation of Rule 2, but rather, based upon a belief that "this type of error" automatically entitles an appellant to review via Rule 2.
 
 See
 

 Campbell
 
 , [243] N.C.App. [563],
 
 777 S.E.2d at 530
 
 . The court thus acted under the erroneous belief that, because defendant presented a fatal variance argument, the court lacked the ability to act otherwise than to reach the merits of defendant's contention. In doing so, the lower court failed to recognize its discretion to refrain from undertaking such a review if it so chose. Because the Court of Appeals proceeded under this misapprehension of law, it failed to exercise the discretion inherent in the "residual power of our appellate courts."
 
 See
 

 Steingress
 
 , 350 N.C. at 66, 511 S.E.2d at 299-300.
 

 Accordingly, we reverse and remand this case to the Court of Appeals so that it may independently and expressly determine whether, on the facts and under the circumstances of this specific case, to exercise its discretion to employ Rule 2 of the North Carolina Rules of Appellate Procedure, suspend Rule 10(a)(1), and consider
 
 *809
 
 the merits of defendant's fatal variance argument. The remaining issue addressed by the Court of Appeals is not before this Court, and that court's decision as to that matter remains undisturbed.
 

 Campbell SC II
 
 ,
 
 369 N.C. 599
 
 ,
 
 799 S.E.2d at 603
 
 . We will therefore, for the second time, "independently and expressly determine whether, on the facts and under the circumstances of this specific case, to exercise [our] discretion to employ Rule 2 of the North Carolina Rules of Appellate Procedure, suspend Rule 10(a)(1), and consider the merits of defendant's fatal variance argument."
 
 Campbell SC II
 
 ,
 
 369 N.C. 599
 
 ,
 
 799 S.E.2d at 603
 
 .
 

 We first respectfully note this Court did not act under "the erroneous belief" that we were required to "reach the merits of defendant's contention" on his fatal variance argument, nor did we "fail[ ] to recognize [our] discretion to refrain from undertaking such a review if [we] so
 
 *748
 
 chose."
 
 Id
 
 . at 604,
 
 799 S.E.2d at 603
 
 . Our opinion noted that review under Rule 2 is discretionary and that we had the authority to deny this review, which is why the opinion stated that we would "
 
 exercise our discretion
 
 under Rule 2 to review this issue."
 
 Campbell COA II
 
 ,
 
 243 N.C. App. 563
 
 ,
 
 777 S.E.2d at 530
 
 (emphasis added). Yet we also appreciate the Supreme Court's concern that discretionary review under Rule 2 be granted only in the appropriate cases and understand that we should fully explain our rationale for allowing discretionary review.
 

 II. N.C. Rule of Appellate Procedure Rule 2 Analysis
 

 i. Discretion Under Rule 2
 

 Discretion is an essential concept in judicial decision-making. Determining how and when to exercise its discretion is a crucial part of any court's role. Black's Law Dictionary defines "judicial discretion" as "[t]he exercise of judgment by a judge or court based on what is fair under the circumstances and guided by the rules and principles of law; a court's power to act or not act when a litigant is not entitled to demand the act as a matter of right." Discretion, Black's Law Dictionary (9th Ed. 2009). To determine what is "fair under the circumstances," usually courts are "guided by the rules and principles of law,"
 

 id.
 

 , since if a court acted without consideration of "rules and principles of law," including prior cases from the same court or a higher court whose opinions are binding upon the lower court, litigants similarly situated and with similar cases may be treated differently. In the United States, we normally consider such different treatment as unfair, if there are no other extenuating circumstances to justify such disparate treatment. Even a small child has a sense of fairness and believes that he has been treated unfairly if he gets the smaller piece of cake while his brother gets the larger piece. Individual judges and courts have discretion in many areas of law and our legal system is considered "fair" only where that discretion is exercised thoughtfully, carefully, and to the extent possible, in the same manner for cases and issues of the same sort.
 

 Scholars who study how courts exercise discretion have described two types of judicial discretion: primary and secondary.
 

 When an adjudicator has the primary type, he has decision-making discretion, a wide range of choice as to what he decides, free from the constraints which characteristically attach whenever legal rules enter the decision process. When the law accords primary discretion in the highest degree in a particular area, it says in effect that the court is free to render the decision it chooses;
 

 *749
 
 that decision-constraining rules do not exist here; and that even looser principles or guidelines have not been formulated. In such an area, the court can do no wrong, legally speaking, for there is no officially right or wrong answer.
 

 The other type of discretion, the secondary form, has to do with hierarchical relations among judges. It enters the picture when the system tries to prescribe the degree of finality and authority a lower court's decision enjoys in the higher courts. Specifically, it comes into full play when the rules of review accord the lower court's decision an unusual amount of insulation from appellate revision. In this sense, discretion is a review-restraining concept. It gives the trial judge a right to be wrong without incurring reversal.
 

 *810
 
 ....
 

 One source of confusion in treating the subject is that courts tend to use the two types of discretion indiscriminately, interchangeably and without marking the distinction.
 

 Maurice Rosenberg,
 
 Judicial Discretion of the Trial Court, Viewed from Above
 
 ,
 
 22 Syracuse L.Rev. 635
 
 , 637-38 (1971).
 

 As an appellate court, we have the secondary form of discretion, and although it is a "review-restraining concept," our Supreme Court has given us guidance in how to exercise our discretion under Rule 2. As explained by the Supreme Court in
 
 State v. Hart
 
 :
 

 Fundamental fairness and the predictable operation of and predictably operating the courts for which our Rules of Appellate Procedure were designed depend upon the consistent exercise of this authority. Furthermore, inconsistent application of the Rules may detract from the deference which federal habeas courts will accord to their application. Although a petitioner's failure to observe a state procedural rule may constitute an adequate and independent state ground barring federal habeas review, a state procedural bar is not "adequate" unless it has been consistently or regularly applied. Thus, if the Rules are not applied consistently and uniformly, federal habeas tribunals could potentially conclude that the Rules are not an adequate and independent state ground barring
 
 *750
 
 review. Therefore, it follows that our appellate courts must enforce the Rules of Appellate Procedure uniformly.
 

 State v. Hart
 
 ,
 
 361 N.C. 309
 
 , 317,
 
 644 S.E.2d 201
 
 , 206 (2007) (citations, quotation marks, and brackets omitted) (emphasis added).
 

 ii. Cases Addressing Rule 2 Review of Fatal Variance Issues
 

 In our last opinion we briefly addressed our decision to allow review under Rule 2:
 

 Defendant next contends that the trial court erred in failing to dismiss the larceny charge due to a fatal variance between the indictment and the evidence as to the ownership of the stolen property. Defendant's trial counsel failed to raise this issue at trial, so defendant requests that we invoke North Carolina Rule of Appellate Procedure 2, or, alternatively, that we review this issue for ineffective assistance of counsel. N.C. R. App. P. 2 ("To prevent manifest injustice to a party ... either court of the appellate division may ... suspend or vary the requirements or provisions of any of these rules in a case pending before it[.]"). In
 
 State v. Gayton-Barbosa
 
 , this Court invoked Rule 2 to review a similar fatal variance argument and held that this type of error is "sufficiently serious to justify the exercise of our authority under [ Rule 2 ]."
 
 197 N.C.App. 129
 
 , 134,
 
 676 S.E.2d 586
 
 , 589-90 (2009). Accordingly,
 
 we exercise our discretion under Rule 2 to review this issue
 
 .
 

 Campbell COA II
 
 ,
 
 243 N.C.App. 563
 
 ,
 
 777 S.E.2d at 530
 
 (emphasis added).
 

 We regret we did not explain our deliberative process, but we were, and still are, well aware of this Court's discretion to decline to review defendant's fatal variance argument under Rule 2. As directed by the Supreme Court, we will explain why we now exercise our discretion to review defendant's argument under Rule 2.
 

 Our discretion is guided in large part by other similar cases decided by this Court and the North Carolina Supreme Court, although clearly the result itself does not depend upon the result in any prior case. As directed by
 
 Hart
 
 , we have taken care to exercise our discretion in applying Rule 2 "consistently and uniformly."
 
 Hart
 
 ,
 
 361 N.C. at 317
 
 ,
 
 644 S.E.2d at 206
 
 . On remand, we have attempted to survey every North Carolina case, published and unpublished, which has addressed whether to grant discretionary review under Rule 2 of an argument based upon a fatal
 
 *751
 
 variance.
 
 [1]
 
 We have found that in many cases
 
 *811
 
 which have granted discretionary review, this Court determined that the defendant raised a meritorious fatal variance argument, so his conviction on the particular crime would have to be reversed, but for this determination.
 
 See, e.g.,
 

 State v. Hill
 
 , --- N.C.App. ----, ----,
 
 785 S.E.2d 178
 
 , 180 (2016) ("[W]e conclude that one of these fatal variance arguments is meritorious and exercise our discretion under Rule 2 to suspend the appellate preservation rules and consider that argument[.]");
 
 State v. Gayton-Barbosa
 
 ,
 
 197 N.C.App. 129
 
 , 135,
 
 676 S.E.2d 586
 
 , 590 (2009) ("[G]iven the peculiar facts of this case, it is appropriate to address defendant's variance-based challenge on the merits.");
 
 State v. Langley
 
 ,
 
 173 N.C.App. 194
 
 , 199,
 
 618 S.E.2d 253
 
 , 257 (2005) ("[W]e hold that there was a fatal variance between the indictment and the evidence. Accordingly, we vacate defendant's conviction for possession of a firearm by a felon."). Since failure to grant discretionary review would be a "manifest injustice" to the defendant, the court has granted discretionary review.
 
 See, e.g.,
 

 Gayton-Barbosa
 
 ,
 
 197 N.C.App. at 135
 
 ,
 
 676 S.E.2d at 590
 
 ("[I]t is difficult to contemplate a more 'manifest injustice' to a convicted defendant than that which would result from sustaining a conviction that lacked adequate evidentiary support[.]");
 
 Langley
 
 ,
 
 173 N.C.App. at 197
 
 ,
 
 618 S.E.2d at 255
 
 ("We believe it necessary to apply Rule 2 and consider the merits of defendant's argument in order to prevent manifest injustice.").
 
 See also
 

 State v. Johnson
 
 ,
 
 214 N.C.App. 195
 
 ,
 
 714 S.E.2d 530
 
 ,
 
 2011 WL 3276685
 
 (Aug. 2, 2011) (No. COA10-1031) (unpublished).
 

 There are also cases in which this Court elected to invoke Rule 2 -because those cases involved situations similar to others where we had invoked Rule 2 -but then ultimately concluded that a fatal variance had not actually occurred under those facts and circumstances.
 
 See, e.g.,
 

 State v. McNair
 
 , --- N.C.App. ----, ----,
 
 799 S.E.2d 631
 
 , 643, 644 (exercising Rule 2 discretionary review and comparing to
 
 Gayton-Barbosa
 
 , where "we invoked Rule 2 to review a similar fatal variance argument that had not been adequately preserved for appellate review[,]" but ultimately concluding "we cannot say that a variance existed between the charge alleged in the indictment and the evidence at trial."),
 
 disc. review denied
 
 , --- N.C. ----,
 
 803 S.E.2d 394
 
 (2017) ;
 
 State v. Everette
 
 ,
 
 237 N.C.App. 35
 
 , 40,
 
 764 S.E.2d 634
 
 , 638 (2014) (electing to review
 
 *752
 
 defendant's argument "in our discretion pursuant to Rule 2" but concluding that the defendant "has not shown a variance between the indictment and the evidence presented.").
 
 See also
 

 State v. Jefferies
 
 ,
 
 243 N.C.App. 455
 
 ,
 
 776 S.E.2d 872
 
 , 878-79 (2015) (invoking Rule 2 but finding no fatal variance);
 
 State v. Weaver
 
 ,
 
 123 N.C.App. 276
 
 , 291,
 
 473 S.E.2d 362
 
 , 371 (1996) ;
 
 State v. Holloway
 
 , --- N.C.App. ----,
 
 799 S.E.2d 466
 
 ,
 
 2017 WL 2118712
 
 (May 16, 2017) (No. COA16-940) (unpublished);
 
 State v. Tomlinson
 
 ,
 
 230 N.C.App. 146
 
 ,
 
 752 S.E.2d 258
 
 ,
 
 2013 WL 5629151
 
 (Oct. 15, 2013) (No. COA13-398) (unpublished);
 
 State v. Maberson
 
 ,
 
 225 N.C.App. 267
 
 ,
 
 736 S.E.2d 648
 
 ,
 
 2013 WL 149878
 
 (Jan. 15, 2013) (No. COA12-227) (unpublished);
 
 State v. Wilkes
 
 ,
 
 188 N.C.App. 848
 
 ,
 
 656 S.E.2d 735
 
 ,
 
 2008 WL 441506
 
 (Feb. 19, 2008) (No. COA07-395) (unpublished).
 

 Where this Court has
 
 not
 
 granted discretionary review, the Court has typically determined there was no fatal variance and thus no need to consider the issue-which is tacitly a determination of the issue-because it would make no difference in the result if we allowed review.
 
 See, e.g.,
 

 State v. Mostafavi
 
 , --- N.C.App. ----, ----,
 
 802 S.E.2d 508
 
 , 510 ("Defendant has failed to demonstrate the 'exceptional circumstances' necessary ... for us to invoke Appellate Rule 2."),
 
 temporary stay allowed
 
 , --- N.C. ----,
 
 800 S.E.2d 419
 
 (2017) ;
 
 State v. Pender
 
 ,
 
 243 N.C.App. 142
 
 ,
 
 776 S.E.2d 352
 
 , 358 (2015) ("Because this case does not involve exceptional circumstances, we, in our discretion, decline to invoke Rule 2."). Failure to grant review causes no injustice since it would not change the result.
 
 See, e.g.,
 

 Pender
 
 ,
 
 243 N.C.App. 142
 
 , 776 S.E.2d at 358 ("Even assuming, without deciding, that defendant's trial counsel's performance was deficient, defendant cannot show the requisite prejudice since, even if the alleged variances were made the basis for his motion to dismiss, the motion
 
 *812
 
 should have in any event been denied.").
 
 See also
 

 State v. Joyner
 
 ,
 
 227 N.C.App. 650
 
 ,
 
 745 S.E.2d 375
 
 (June 4, 2013) (No. COA12-1244) (unpublished);
 
 State v. Velasquez
 
 ,
 
 204 N.C.App. 597
 
 ,
 
 696 S.E.2d 924
 
 ,
 
 2010 WL 2367308
 
 (June 15, 2010) (No. COA09-1274) (unpublished) ("As the evidence tends to show that there was no fatal variance between the indictment and the evidence presented at trial, we conclude that the facts in this case do not present such 'exceptional circumstances' that Rule 2 need be invoked to avoid 'manifest injustice.' "). By considering the potential merit of the fatal variance argument and determining that no fatal variance existed, these opinions imply that the Court may have granted review under Rule 2 if the case involved an actual fatal variance which could have changed the result on the merits.
 

 In other cases, both this Court and the Supreme Court have avoided addressing directly whether or not to apply Rule 2 and instead taken the approach of assuming for argument's sake that the argument was
 
 *753
 
 properly preserved for appeal, but then concluding nevertheless that the asserted fatal variance argument would fail, so it is not worth addressing further.
 
 See, e.g.
 
 ,
 
 State v. Pickens
 
 ,
 
 346 N.C. 628
 
 , 645,
 
 488 S.E.2d 162
 
 , 172 (1997) ("[A]ssuming
 
 arguendo
 
 that defendant has preserved this argument for review, we hold that the asserted variance does not constitute error in this case.");
 
 State v. Frazier
 
 ,
 
 228 N.C.App. 568
 
 ,
 
 749 S.E.2d 112
 
 ,
 
 2013 WL 4007075
 
 (Aug. 6, 2013) (No. COA13-5) (unpublished). Just as in the cases above where the Court did not grant Rule 2 review because no fatal variance existed, by considering
 
 arguendo
 
 the fatal variance issue, these opinions also imply that the Court may have granted review under Rule 2 if the case involved an actual fatal variance which could have changed the result on the merits.
 

 But there are also, in contrast, a limited number of cases where this Court has simply declined-without evaluating the merits of the argument-to exercise its discretion to review a fatal variance argument simply because no argument was raised to the trial court of such fatal variance.
 
 See, e.g.,
 

 State v. Hooks
 
 ,
 
 243 N.C.App. 435
 
 ,
 
 777 S.E.2d 133
 
 , 139 ("Defendant seeks for the first time on appeal to argue the trial court erred by denying his motion to dismiss due to a fatal variance between the indictment and the State's proof at trial. Defendant failed to raise or make this argument in support of his motion to dismiss at trial. Because Defendant failed to properly preserve this issue, he has waived his right to appellate review on this issue. We decline to address the issue and dismiss this issue." (citation omitted) ),
 
 disc. review denied
 
 ,
 
 368 N.C. 605
 
 ,
 
 780 S.E.2d 561
 
 (2015) ;
 
 see also
 

 State v. Hester
 
 ,
 
 224 N.C.App. 353
 
 , 358,
 
 736 S.E.2d 571
 
 , 574 (2012),
 
 aff'd per curiam
 
 ,
 
 367 N.C. 119
 
 ,
 
 748 S.E.2d 145
 
 (2013) ;
 
 State v. Curry
 
 ,
 
 203 N.C.App. 375
 
 , 385-86,
 
 692 S.E.2d 129
 
 , 138 (2010). Since the Supreme Court has remanded this case to us with the direction to "independently and expressly determine whether, on the facts and under the circumstances of this specific case,"
 
 Campbell SC II
 
 ,
 
 369 N.C. 599
 
 , 799 S.E.2d at 603, we believe it would be inappropriate in this particular case to simply allow or reject review under Rule 2 with no further explanation in our opinion.
 

 As directed by the Supreme Court in
 
 Hart
 
 , one of our considerations is to exercise our discretionary authority under Rule 2 uniformly and consistently from case to case, so we treat all parties in cases similarly situated and present similar issues the same, to the extent this is possible. In
 
 State v. Hargett
 
 , our Court recognized the injustice of either granting or denying discretionary review in a manner inconsistent with the treatment in other similar cases:
 

 *754
 
 However, to address the merits of Hargett's appeal, despite his failure to recognize and comply with longstanding case law both at trial and in his brief to this Court, would not prevent manifest injustice. Rather, we believe it would be an injustice to the numerous other defendants who have had their appeals dismissed by application of the holding of
 
 Oglesby
 
 .
 
 See, e.g.,
 

 State v. Bryant
 
 , [230] N.C.App. [410],
 
 753 S.E.2d 397
 
 (2013) (unpublished);
 
 State v. Berrier
 
 ,
 
 217 N.C.App. 641
 
 ,
 
 720 S.E.2d 459
 
 (2011) (unpublished);
 
 State v. Black
 
 ,
 
 217 N.C.App. 196
 
 ,
 
 719 S.E.2d 255
 
 (2011) (unpublished);
 
 State v. Gause
 
 ,
 
 201 N.C.App. 447
 
 ,
 
 688 S.E.2d 550
 
 (2009) (unpublished);
 

 *813
 

 State v. Toler
 
 ,
 
 189 N.C.App. 212
 
 ,
 
 657 S.E.2d 446
 
 (2008) (unpublished);
 
 State v. Sullivan
 
 ,
 
 186 N.C.App. 681
 
 ,
 
 652 S.E.2d 71
 
 (2007) (unpublished). Hargett has not convinced this panel that invocation of Rule 2 is appropriate here. Accordingly, his appeal is dismissed.
 

 State v. Hargett
 
 ,
 
 241 N.C.App. 121
 
 , 128,
 
 772 S.E.2d 115
 
 , 121,
 
 appeal dismissed, disc. review and cert. denied
 
 , --- N.C. ----,
 
 776 S.E.2d 191
 
 (2015).
 

 In our prior opinion, when we compared defendant's situation to the facts and legal issue in
 
 Gayton-Barbosa
 
 ,
 
 197 N.C.App. at 135
 
 ,
 
 676 S.E.2d at 590
 
 , we considered this case to be so similar to
 
 Gayton-Barbosa
 
 we erroneously thought it unnecessary to present further explanation beyond that already apparent from the facts, procedural history, and issues presented. But we did not engage in an extended discussion of how we made our independent determination this case was so similar to
 
 Gayton-Barbosa
 
 and others that we believed we should allow review under Rule 2. Our dissenting colleague seeks to distinguish the two cases based upon the "gravity" of the offenses, but the defendant in
 
 Gayton-Barbosa
 
 was, like defendant here, charged with several felonies, and one of those charges was felony larceny, the same crime we are considering here.
 
 Id
 
 . at 131,
 
 676 S.E.2d at 588
 
 . We cannot distinguish the "gravity" of the charge of felony larceny here from the
 
 same charge
 
 in
 
 Gayton-Barbosa
 
 , either by its effect on the defendant or on society, since it was the same crime. The same legal argument was addressed in both cases as well.
 
 Id
 
 . at 133-35,
 
 676 S.E.2d at 589-90
 
 . After review of all of this Court's prior opinions on this subject, we seek to exercise our discretion in accord with this Court's prior treatment of similar cases. The Supreme Court did express approval for the analytical framework in
 
 Gayton-Barbosa
 
 , so we will use that approach and describe our independent determination to allow review under Rule 2.
 

 *755
 
 iii. Application of
 
 Gayton-Barbosa
 
 Approach to Rule 2 Review
 

 We first note the procedural and legal stance of defendant's request for Rule 2 review by this Court on first remand from the Supreme Court. Besides its factual, legal, and procedural history, this case presented the additional extraordinary element of the Supreme Court's opinion in
 
 Campbell I
 
 's appeal,
 
 which overruled an entire line of cases.
 

 Campbell SC I
 
 , 368 N.C. at 87, 772 S.E.2d at 444. The law as established in
 
 Campbell SC I
 
 affected the legal issue defendant had presented for discretionary review under Rule 2.
 
 See
 

 id
 
 . ("Therefore, we hold that alleging ownership of property in an entity identified as a church or other place of religious worship, like identifying an entity as a 'company' or 'incorporated,' signifies an entity capable of owning property, and the line of cases from the Court of Appeals that has held otherwise is overruled. Accordingly, the larceny indictment here is valid on its face even though it does not specify that Manna Baptist Church is an entity capable of owning property, and the Court of Appeals erred in vacating defendant's conviction for larceny on that basis." (citations omitted) ).
 

 The Supreme Court's ruling in
 
 Campbell SC I
 
 essentially created the law which gave defendant's Issue (4) such strength it could be outcome-determinative and could cause manifest injustice to defendant if not reviewed, since it changed the result on defendant's first issue. We noted as much in our second opinion:
 

 Based upon our Supreme Court's opinion in this case on discretionary review, Manna Baptist Church was an entity capable of owning property.
 
 Campbell
 
 , 368 N.C. at ----, 772 S.E.2d at 444 ("[W]e hold that alleging ownership of property in an entity identified as a church or other place of religious worship, like identifying an entity as a "company" or "incorporated," signifies an entity capable of owning property, and the line of cases from the Court of Appeals that has held otherwise is overruled."). The evidence showed that Manna Baptist Church owned the property, but no evidence suggests that Pastor Stevens individually had any sort of ownership interest in the property. Additionally, the fact that Pastor Stevens is an employee of Manna Baptist Church, the true owner of the property, does not cure the fatal variance.
 

 *814
 

 Campbell COA II
 
 , [243] N.C.App. [563], 777 S.E.2d at 533.
 

 Since our Supreme Court, in
 
 Campbell SC II
 
 , overruled none of the many prior cases of this Court or the Supreme Court which granted
 
 *756
 
 discretionary review of fatal variance issues under Rule 2 under the same of analysis as used in
 
 Gayton-Barbosa
 
 , we are still bound by those cases. Although we are not bound to reach the same result-to allow review under Rule 2 or not-we will consider the same factors and use a similar analysis in making this discretionary decision. The decision to allow review under Rule 2 is discretionary, but not arbitrary or based upon the whim of a particular panel or judge. Since the Supreme Court specifically expressed approval for the analysis in
 
 Gayton-Barbosa,
 
 we will use a similar analysis here.
 
 See
 

 Campbell SC II
 
 ,
 
 369 N.C. 599
 
 , 799 S.E.2d at 603, n.3 ("Notably, the Court of Appeals panel in
 
 Gayton-Barbosa
 
 , the case cited by the
 
 Campbell II
 
 panel, employed exactly such an individualized analysis in deciding to invoke Rule 2.
 
 Gayton-Barbosa
 
 ,
 
 197 N.C.App. 129
 
 , 135 & n. 4,
 
 676 S.E.2d 586
 
 , 590 & n. 4 (discussing the specific circumstances and then determining that, '
 
 given the peculiar facts of this case
 
 , it is appropriate to address [the] defendant's variance-based challenge on the merits' (emphasis added) ).").
 

 Just as in
 
 Gayton- Barbosa
 
 , the issue before us is, "the extent, if any, to which the Court is entitled to address this variance-based challenge to defendant's felonious larceny conviction on the merits despite the absence of a contemporaneous objection at trial."
 
 197 N.C.App. at 134
 
 ,
 
 676 S.E.2d at 589
 
 . As summarized in
 
 Gayton-Barbosa
 
 , we first consider "the Supreme Court's decision" in
 
 State v. Brown,
 

 263 N.C. 786
 
 , 787-88,
 
 140 S.E.2d 413
 
 , 413 (1965), where
 

 the Supreme Court granted relief on appeal as the result of a fatal variance relating to the ownership of allegedly stolen property despite the fact that no dismissal motion had been made at trial and that the variance issue had not been the subject of an assignment of error on appeal. Even so, the Supreme Court decided this issue on the merits under its general supervisory authority over the trial courts. The general supervisory authority under which the Supreme Court acted in
 
 Brown
 
 is currently embodied in N.C. R. App. P. Rule 2, which authorizes "either court of the appellate division" to "suspend or vary the requirements or provisions of any of these rules. ..." Although N.C. R. App. P. Rule 2 is available to prevent "manifest injustice," the Supreme Court has stated that this residual power to vary the default provisions of the appellate procedure rules should only be invoked rarely and in exceptional circumstances.
 

 Gayton-Barbosa,
 

 197 N.C.App. at 134
 
 ,
 
 676 S.E.2d at 589
 
 (citations and quotation marks omitted).
 

 *757
 
 The
 
 Gayton-Barbosa
 
 Court noted that "the Supreme Court's decision in
 
 Brown
 
 suggests that fatal variances of the type present here are sufficiently serious to justify the exercise of our authority under N.C. R. App. P. 2."
 
 Gayton-Barbosa
 
 ,
 
 197 N.C.App. at 134
 
 ,
 
 676 S.E.2d at 590
 
 . The same issue is presented here, and it is also "sufficiently serious to justify the exercise of our authority" under Rule 2.
 
 Id
 
 .
 

 The
 
 Gayton-Barbosa
 
 Court noted a second factor, which is that
 

 a variance-based challenge is, essentially, a contention that the evidence is insufficient to support a conviction. The Supreme Court and this Court have regularly invoked N.C. R. App. P. 2 in order to address challenges to the sufficiency of the evidence to support a conviction.
 
 State v. Booher
 
 ,
 
 305 N.C. 554
 
 , 564,
 
 290 S.E.2d 561
 
 , 566 (1982) ("Nevertheless, when this Court firmly concludes, as it has here, that the evidence is insufficient to sustain a criminal conviction, even on a legal theory different from that argued, it will not hesitate to reverse the conviction
 
 sua sponte
 
 , in order to 'prevent manifest injustice to a party.' " (quoting N.C. R. App. P. 2 ) )[.]
 

 Gayton-Barbosa,
 

 197 N.C.App. at 134-35
 
 ,
 
 676 S.E.2d at 590
 
 (citations omitted). This law applies here as well. Defendant's challenge is based upon the premise that the evidence is insufficient to support his conviction, since the State presented no evidence that Pastor Stevens had any ownership interest in the
 
 *815
 
 property and that he was simply an employee of Manna Baptist church. Defendant has presented a viable argument of a fatal variance and insufficiency of the evidence to support his conviction.
 

 The third, and final, factor discussed by the
 
 Gayton-Barbosa
 
 Court was the potential for manifest injustice to the defendant if the court upheld a conviction without adequate evidentiary support:
 

 Finally, it is difficult to contemplate a more "manifest injustice" to a convicted defendant than that which would result from sustaining a conviction that lacked adequate evidentiary support, particularly when leaving the error in question unaddressed has double jeopardy implications. Thus, given the peculiar facts of this case, it is appropriate to address defendant's variance-based challenge on the merits.
 

 Id
 
 . at 135,
 
 676 S.E.2d at 589-90
 
 . Here, the exact same is true. Defendant's argument is that there was not sufficient evidence to show that Pastor
 
 *758
 
 Stevens had any ownership interest in the property, and defendant is correct. It would be manifestly unjust for defendant's conviction to be sustained where the State did not present evidence that Pastor Stevens had an ownership interest in the stolen property under the fatal variance law as it stands and which this Court is bound to follow.
 

 We therefore consider this to be an unusual and extraordinary case in which Rule 2 review is appropriate to exercise our discretionary authority consistently and fairly, and because our failure to do so would cause manifest injustice to a party, the defendant.
 
 See
 

 Hart
 
 ,
 
 361 N.C. at 315-16
 
 ,
 
 644 S.E.2d at 205
 
 ("The text of Rule 2 provides two instances in which an appellate court may waive compliance with the appellate rules: (1) to prevent manifest injustice to a party; and (2) to expedite decision in the public interest. While it is certainly true that Rule 2 has been and may be so applied in the discretion of the Court, we reaffirm that Rule 2 relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." (citations, quotation marks, and brackets omitted) ). In our discretion, we also considered the application of the fatal variance rule in this case to present a "significant issue[ ] of importance,"
 
 id
 
 ., particularly given the Supreme Court's ruling-overruling a line of precedents from this Court-in
 
 Campbell SC I
 
 .
 
 Campbell SC I
 
 , 368 N.C. at 87, 772 S.E.2d at 444.
 

 We also know that we could exercise our discretion differently and make a different determination on review under Rule 2 than we did in our last opinion. In fact, had we simply exercised our discretion to decline to review Issue (4), our work would have been much easier and this opinion much shorter. But we have attempted to fulfill the Supreme Court's directions on remand, and in doing so, we have independently determined to exercise our discretionary authority in accord with
 
 Hart
 
 ,
 
 Gayton-Barbosa
 
 , and our Court's prior treatment in similar cases, since our refusal to do so would result in manifest injustice to defendant.
 

 III. Fatal Variance as to Ownership of the Stolen Property
 

 Since we have elected to allow discretionary review of defendant's Issue (4), our next task on remand is to consider the same issue as we considered in our last opinion-whether the trial court erred in failing to dismiss the larceny charge due to a fatal variance between the indictment and the evidence on the ownership of the stolen property. While there have been cases which have addressed fatal variance since our prior opinion was filed,
 
 see, e.g.
 
 ,
 
 *759
 

 State v. Bacon
 
 , --- N.C.App. ----, ----,
 
 803 S.E.2d 402
 
 , 406,
 
 temporary stay allowed
 
 , --- N.C. ----,
 
 802 S.E.2d 460
 
 (2017) ;
 
 State v. Fink
 
 , --- N.C.App. ----, ----,
 
 798 S.E.2d 537
 
 , 542 (2017) ;
 
 Hill
 
 , --- N.C.App. at ----,
 
 785 S.E.2d at
 
 182 ; there has been no major change to case law in this area, so we adopt the same analysis as we did in
 
 Campbell COA II
 

 [2]
 
 :
 
 *816
 
 ii. Analysis
 

 Defendant contends that the trial court erred in failing to dismiss the larceny charge due to a fatal variance as to the ownership of the stolen property. Defendant specifically argues that a fatal variance occurred "because the State never proved the property was owned by both Andy Stevens and Manna Baptist Church." Defendant relies on
 
 State v. Hill
 
 for the proposition that where an indictment alleges multiple owners, the State must prove that there were in fact multiple owners.
 
 See
 

 79 N.C. 656
 
 , 658-59 (1878).
 

 In
 
 Hill
 
 , the indictment alleged that the stolen property belonged to "Lee Samuel and others," but the evidence at trial showed that the stolen property belonged to Lee Samuel alone.
 
 79 N.C. at 658
 
 . Our Supreme Court held that this inconsistency constituted a fatal variance.
 
 Id
 
 . at 658-59. Hill has been consistently cited and followed as binding precedent by North Carolina courts since 1878.
 
 See, e.g.,
 

 State v. Albarty
 
 ,
 
 238 N.C. 130
 
 , 131-32,
 
 76 S.E.2d 381
 
 , 382 (1953) ;
 
 State v. Hicks
 
 ,
 
 233 N.C. 31
 
 , 34,
 
 62 S.E.2d 497
 
 , 499 (1950) ;
 
 State v. Williams
 
 ,
 
 210 N.C. 159
 
 , 161,
 
 185 S.E. 661
 
 , 662 (1936) ;
 
 State v. Corpening
 
 ,
 
 191 N.C. 751
 
 , 753,
 
 133 S.E. 14
 
 , 15 (1926) ;
 

 *760
 

 State v. Harbert
 
 ,
 
 185 N.C. 760
 
 , 762,
 
 118 S.E. 6
 
 , 7 (1923). Most recently, our Supreme Court cited
 
 Hill
 
 in
 
 State v. Ellis
 
 ,
 
 368 N.C. 342
 
 ,
 
 776 S.E.2d 675
 
 , 678 (2015). The Court did not overrule
 
 Hill
 
 or suggest that its holding is no longer binding precedent in the fatal variance context, as is the case here.
 
 Id
 
 . at 345-46, 776 S.E.2d at 678. In fact, in
 
 Ellis
 
 , our Supreme Court carefully distinguished between cases raising the issue like the one addressed by
 
 Ellis
 
 , the "facial sufficiency of the underlying criminal pleading" and the issue raised here, whether "a fatal variance exist[s] between the crime charged in the relevant criminal pleading and the evidence offered by the State at trial[.]"
 
 Id
 
 . at 346, 776 S.E.2d at 678. Our Supreme Court discussed
 
 Hill
 
 as part of its explanation of this distinction:
 

 According to defendant, this Court's decisions establish that, where a criminal pleading purporting to charge the commission of an injury to personal property lists two entities as property owners, both entities must be adequately alleged to be capable of owning property for the pleading to properly charge the commission of the crime. Although defendant cites numerous cases in support of this position, each decision on which he relies involves a claim that a fatal variance existed between the crime charged in the relevant criminal pleading and the evidence offered by the State at trial, rather than a challenge to the facial sufficiency of the underlying criminal pleading. For example, in
 
 State v. Greene
 
 ,
 
 289 N.C. 578
 
 , 585-86,
 
 223 S.E.2d 365
 
 , 370 (1976), this Court held that there was no fatal variance between the indictment and the evidence in a case in which both men listed as property owners in the indictment were shown to have an ownership interest in the property. Similarly, we concluded in
 
 State v. Hill
 
 ,
 
 79 N.C. 656
 
 , 658-59 (1878), that a fatal variance did exist in a case in which the indictment alleged that the property was owned by "Lee Samuel and others" while the evidence showed that Lee Samuel was the sole owner of the property in question. Finally, in
 
 State v. Burgess
 
 ,
 
 74 N.C. 272
 
 , 272-73 (1876), we determined that a fatal variance existed in a case in which the indictment alleged that the property was owned by Joshua Brooks while the evidence tended to show that the property in question was
 
 *817
 
 owned by both Mr. Brooks and an individual named Hagler.
 
 *761
 

 Id
 
 . at 346, 776 S.E.2d at 678. Thus, if the State fails to present evidence of a property interest of some sort in both of the alleged owners, there is a fatal variance between the indictment and the proof.
 
 See
 

 id.
 
 at 346, 776 S.E.2d at 678.
 

 This Court recently summarized the types of property interest that constitute a "special property interest," which, if proven, are consistent with a larceny indictment's allegation of ownership:
 

 According to well-established North Carolina law, "the indictment in a larceny case must allege a person who has a property interest in the property stolen and that the State must prove that that person has ownership, meaning title to the property or some special property interest."
 
 State v. Greene
 
 ,
 
 289 N.C. 578
 
 , 584,
 
 223 S.E.2d 365
 
 , 369 (1976). "It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment."
 
 State v. Jackson
 
 ,
 
 218 N.C. 373
 
 , 376,
 
 11 S.E.2d 149
 
 , 151 (1940). In other words, "the allegation and proof must correspond."
 
 Id
 
 . "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." [
 
 State v. Waddell
 
 ,
 
 279 N.C. 442
 
 , 445,
 
 183 S.E.2d 644
 
 , 646 (1971).] "In indictments for injuries to property it is necessary to lay the property truly, and a variance in that respect is fatal."
 
 State v. Mason
 
 ,
 
 35 N.C. 341
 
 , 342 (1852).
 

 However, if it can be shown that the person named in the indictment, though not the actual owner of the stolen item, had a "special property interest" in the item, then the defect in the indictment will not be fatal.
 
 State v. Craycraft
 
 ,
 
 152 N.C. App. 211
 
 , 213,
 
 567 S.E.2d 206
 
 , 208 (2002) ("The State may prove ownership by introducing evidence that the person either possessed title to the property or had a special property interest. If the indictment fails to allege the existence of a person with title or special property interest, then the indictment contains a fatal variance." (citation omitted) ).
 

 Our Courts have evaluated circumstances in which a special property interest has been established.
 
 See e.g.
 

 *762
 

 State v. Adams
 
 ,
 
 331 N.C. 317
 
 , 331,
 
 416 S.E.2d 380
 
 , 388 (1992) (spouses have a special property interest in jointly possessed property, though not jointly owned);
 
 State v. Schultz
 
 ,
 
 294 N.C. 281
 
 , 285,
 
 240 S.E.2d 451
 
 , 454-55 (1978) (a "bailee or a custodian" has a special property interest in items in his or her possession);
 
 State v. Salters
 
 ,
 
 137 N.C.App. 553
 
 , 555-56,
 
 528 S.E.2d 386
 
 , 389 (2000) (parents have a special property interest in their children's belongings kept in their residence, but "that special interest does not extend to a caretaker of the property even where the caretaker had actual possession") [,
 
 cert. denied
 
 ,
 
 352 N.C. 361
 
 ,
 
 544 S.E.2d 556
 
 (2000) ];
 
 State v. Carr
 
 ,
 
 21 N.C.App. 470
 
 , 471-72,
 
 204 S.E.2d 892
 
 , 893-94 (1974) (where a car was registered to a corporation, the son of the owner of that corporation had a special property interest in the car because he was the sole user of the car and in exclusive possession of it).
 

 Conversely, our Courts have established situations in which a special property interest does not exist.
 
 See e.g.
 

 State v. Eppley
 
 ,
 
 282 N.C. 249
 
 , 259-60,
 
 192 S.E.2d 441
 
 , 448 (1972) (owner of a residence did not have a special property interest in a gun kept in his linen closet, but owned by his father);
 
 State v. Downing
 
 ,
 
 313 N.C. 164
 
 , 167-68,
 
 326 S.E.2d 256
 
 , 258-59 (1985) (the owner of a commercial building did not have a special property interest in items stolen from that building as the items were actually owned by the business that rented the building);
 
 Craycraft
 
 ,
 
 152 N.C.App. at 214
 
 ,
 
 567 S.E.2d at 208-09
 
 (landlord did not have a special property interest in furniture he was maintaining after evicting the tenant-owner).
 

 Gayton-Barbosa
 
 ,
 
 197 N.C.App. at 135-36
 
 ,
 
 676 S.E.2d at 590-91
 
 (brackets omitted).
 

 *818
 
 Here, the larceny indictment alleges that the stolen property belonged to "Andy Stevens and Manna Baptist Church[.]" But the evidence at trial simply does not demonstrate that Pastor Stevens held title to or had any sort of ownership interest in the stolen property. All of the evidence tends to show that he dealt with the property only in his capacity as an employee of Manna Baptist Church. Pastor Stevens testified that he was employed as the pastor of Manna Baptist Church and lived on the
 
 *763
 
 church property, and the entirety of the evidence relevant to his interest in the property, if any, was as follows:
 

 [Prosecutor:] On August 19th of 2012, did you arrive at the church for Sunday services?
 

 [Pastor Stevens:] I did.
 

 [Prosecutor:] And upon entering the church that day, what did you observe?
 

 [Pastor Stevens:] We had normal services in the morning. It wasn't until at the end of the service that we were aware that some of the equipment was missing.
 

 [Prosecutor:] Okay. And how was it that you became aware of that?
 

 [Pastor Stevens:] The sound man was trying to record the message and had to divert back to the pulpit [microphone] because the lapel [microphone] was not picking up and at the close of the service, we found that the receiver was missing.
 

 [Prosecutor:] Okay. Were there any other items besides the receiver that were missing?
 

 [Pastor Stevens:] Yes, sir. There were some microphones and some audio cords.
 

 [Prosecutor:] Where are those generally stored in your church?
 

 [Pastor Stevens:] Usually at the front. The cords are usually at the front or in the baptistery changing area in the back and there are also a couple by the sound system. [Prosecutor:] And how many microphones and cords were missing?
 

 [Pastor Stevens:] I know that there [were] three-three, maybe four microphones and probably a similar amount of cords.
 

 [Prosecutor:] Do you know what the value or have an estimate as to what the value of those items were?
 

 [Pastor Stevens:] We estimated about five hundred dollars.
 

 ....
 

 [Prosecutor:] Were you able to recover any of the items that were taken?
 

 [Pastor Stevens:] No, sir.
 

 [Prosecutor:] Has the church had to replace those items?
 

 [Pastor Stevens:] We have. We replaced the receiver.
 

 *764
 
 Pastor Stevens testified that "we" had the church service, discovered the missing items, reported this to the police, estimated the value of the items, and replaced the receiver. He does not state who is included in the term "we," although from context he seems to be referring to the entire congregation in regard to having the church service, to himself and the "sound man" in regard to discovering the missing items, and probably to himself and various other persons as to the estimation of value and the replacement of the receiver. In any event, he never identifies any sort of special property interest in the items stolen and he clearly identifies himself as an employee of Manna Baptist Church.
 

 Based upon our Supreme Court's opinion in this case on discretionary review, Manna Baptist Church was an entity capable of owning property.
 
 Campbell
 
 , 368 N.C. at ----, 772 S.E.2d at 444 ("[W]e hold that alleging ownership of property in an entity identified as a church or other place of religious worship, like identifying an entity as a "company" or "incorporated," signifies an entity capable of owning property, and the line of cases from the Court of Appeals that has held otherwise is overruled."). The evidence showed that Manna Baptist Church owned the property, but no evidence suggests that Pastor Stevens
 
 *819
 
 individually had any sort of ownership interest in the property. Additionally, the fact that Pastor Stevens is an employee of Manna Baptist Church, the true owner of the property, does not cure the fatal variance. In
 
 State v. Greene
 
 , our Supreme Court quoted
 
 State v. Jenkins
 
 ,
 
 78 N.C. 478
 
 , 479-80 (1878), in support of the rule that an employee in possession of property on behalf of the employer does not have a sufficient ownership interest in the property:
 

 "The property in the goods stolen must be laid to be either in him who has the
 
 general
 
 property or in him who has a
 
 special
 
 property. It must [in] all events be laid to be in some one [sic] who has a
 
 property
 
 of some kind in the article stolen. It is not sufficient to charge it to be the property of one who is a mere servant, although he may have had actual possession at the time of the larceny; because having no
 
 property
 
 , his possession is the possession of his master."
 

 *765
 
 The Court then gave the following example:
 

 "A is the general owner of a horse; B is the special owner, having hired or borrowed it, or taken it to keep for a time; C grooms it and keeps the stable and the key, but is a mere servant and has no property at all;-if the horse be stolen, the property may be laid to be either in A
 
 or
 
 B; but not in C although he had the actual possession and the key in his pocket." (Emphasis added).
 
 State v. Jenkins
 
 ,
 
 supra
 
 at 480.
 
 Accord,
 

 State v. Allen
 
 ,
 
 103 N.C. 433
 
 , 435,
 
 9 S.E. 626
 
 , 627 (1889).
 

 Greene
 
 ,
 
 289 N.C. at 584
 
 ,
 
 223 S.E.2d at 369
 
 (brackets omitted). Based upon the example given by our Supreme Court in
 
 Jenkins
 
 , Pastor Stevens was in the position of C, the groom who cared for the horse, while Manna Baptist Church is in the position of A, the owner. Even if Pastor Stevens had actual possession of the property, he had no ownership interest in it.
 
 See
 

 id.
 

 ,
 
 223 S.E.2d at 369
 
 .
 

 In
 
 Greene
 
 , the indictment alleged that the defendant stole "one Ford Diesel Tractor and one set of Long Brand Boggs of one Newland Welborn and Hershel Greene[.]"
 
 Id
 
 .,
 
 223 S.E.2d at 369
 
 (ellipsis omitted). But the evidence showed that "Welborn had legal title to the tractor and that Greene had legal title to the disk boggs and had loaned them to Welborn, who was using them on his tractor for his farming."
 

 Id.
 

 ,
 
 223 S.E.2d at 369
 
 . The defendant argued that there was a fatal variance because "alleging a property interest in both Greene and Welborn automatically means that the allegation is that they are joint owners."
 
 Id
 
 . at 585,
 
 223 S.E.2d at 370
 
 . Our Supreme Court rejected this argument because the State's evidence showed that both alleged owners had either legal title or a special ownership interest in the property: "Welborn was the bailee or special owner of the disk boggs, and Greene had legal title to them."
 
 Id
 
 . at 585-86,
 
 223 S.E.2d at 370
 
 . Our Supreme Court also noted that in the indictment, "the order in which the property was listed corresponded to the order that the title holders of the respective pieces of property were listed"; that is, Welborn owned the tractor, and Greene owned the disk boggs.
 
 Id
 
 . at 586,
 
 223 S.E.2d at 370
 
 .
 

 *766
 
 In this case, the State's evidence did not show that Pastor Stevens had any special property interest in the stolen items. As noted above, the evidence showed that they belonged solely to Manna Baptist Church and Pastor Stevens dealt with the property only as an employee of the church. Although both
 
 Jenkins
 
 and
 
 Hill
 
 are very old cases, they have been followed by our courts for many years, and this Court is not at liberty to disregard them. Based upon these binding precedents, the State must demonstrate that both alleged owners have at least some sort of property interest in the stolen items. In addition, possession by an employee or servant of the actual owner is not a type of special property interest which will support this indictment.
 

 Following
 
 Greene
 
 and
 
 Hill
 
 , we hold that a fatal variance exists because the evidence showed that the stolen property belonged
 
 *820
 
 to the church only.
 
 See
 

 id.
 
 at 584,
 
 223 S.E.2d at
 
 369 ;
 
 Hill
 
 ,
 
 79 N.C. at 658-59
 
 .
 

 III. Conclusion
 

 We .... vacate defendant's conviction for larceny after breaking or entering. Because the trial court consolidated these convictions for sentencing, we remand this case to the trial court for resentencing.
 

 Campbell COA II
 
 ,
 
 243 N.C.App. 563
 
 , 777 S.E.2d at 530-34.
 

 IV. Additional Issues
 

 In the interest of judicial economy, we will also address defendant's two remaining issues. Defendant contends that (5) insufficient evidence supports his larceny conviction; and (6) the trial court violated his constitutional right to a unanimous jury verdict regarding the larceny charge.
 
 Campbell COA II
 
 ,
 
 243 N.C. App. 563
 
 , 777 S.E.2d at 528.
 

 i. (5). Sufficiency of the evidence
 

 "The essential elements of larceny are: (1) the taking of the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with the intent to permanently deprive the owner of the property."
 
 State v. Barbour
 
 ,
 
 153 N.C.App. 500
 
 , 502,
 
 570 S.E.2d 126
 
 , 127 (2002). Defendant argues that the trial court erred by denying his motion to dismiss the larceny charge because the "State failed to present sufficient evidence that [defendant] took the missing items."
 

 *767
 
 When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered. The trial court must decide only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. When the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. However, so long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence.
 

 State v. Miller
 
 ,
 
 363 N.C. 96
 
 , 98-99,
 
 678 S.E.2d 592
 
 , 594 (2009) (citations and quotation marks omitted).
 

 Evidence that raises only a strong suspicion without producing any incriminating circumstances does not reach the level of substantial evidence necessary for the denial of a motion to dismiss. Just as in [a prior case], the most the State showed was that defendant had been in an area where he could have committed the crime charged.
 

 State v. Hamilton
 
 ,
 
 145 N.C.App. 152
 
 , 158,
 
 549 S.E.2d 233
 
 , 237 (2001) (citations, quotation marks, and brackets omitted).
 

 The State's evidence showed that Manna Baptist Church had Wednesday evening services on 15 August 2012 which ended at about 9:00 pm. The next morning, the church secretary discovered the church had been left unlocked, and she locked it before she left. On the next Sunday, 19 August 2012, Pastor Stevens discovered that some audio equipment was missing from the church. The missing items were 4 microphones, one set of sound system wires, a music receiver, and one pair of headphones. Some of the computer equipment had been moved around. There were no signs of forced entry to the church. No fingerprints or DNA evidence were taken from the computer equipment or the cabinet in which the sound equipment had been stored. However, one officer found a wallet in the baptistery changing area and defendant's license was in the wallet. None of the stolen equipment was ever
 
 *768
 
 located, either outside near the church or through checking with local pawn shops.
 

 Two days later, Detective Jessica Woosley looked up the name on the driver's license and discovered that it was defendant and that he was incarcerated in Cleveland County on an unrelated matter. She met with him at
 
 *821
 
 the Cleveland County jail. When he entered the interview room, defendant said, "[T]his can't possibly be good. What have [I] done now that I don't remember?" Detective Woosley read defendant his
 
 Miranda
 
 rights, and he asked for an attorney but continued to speak to her. He saw the name of Manna Baptist Church on a folder and told her he had been at the church and he had "done some things" that night but did not recall all of what he had done. He recalled that the door to the church was open and he went in to get a drink of water.
 

 Defendant's evidence showed that at the time of the alleged crimes, he was almost 51 years old and was on two heart medications, a medicine for stress disorder, a medicine for diabetes, and "high psychotropic drug[s]" for bipolar condition. On the night of 15 August 2012, defendant had been living with Ms. Deaton. She asked him to leave, so he left, taking a duffel bag of his clothing which he later "dumped ... in a ditch" because it was too heavy. He arrived at a friend's house at about 10:00 pm, but around midnight, he was asked to leave that house as well. He left, still walking, and around 2:00 am he walked down Burke Road and saw Manna Baptist Church. He testified that he saw a "sliver of light" coming from the church because the door was not fully closed. He went in to get a drink of water and to pray. He left the church around dawn. He started to have chest pains and called 911; he met the ambulance at the Shanghai Fire Department.
 

 Emergency medical technician Calvin Cobb responded to the call. He testified that he found defendant sitting on the back of a responding vehicle from the fire department. He was very sweaty and asked for a ride to town. He told Mr. Cobb he had been removed from Ms. Deaton's house and wandered all night. Mr. Cobb determined that defendant's medical condition was not critical but he needed medical care and he was transported to Cleveland Regional Medical Center. Defendant was not carrying a backpack or duffel bag and he had nothing in his pockets. Defendant's evidence neither helps nor hurts the State's case. At the most, "[i]t simply explains [defendant's] presence at the scene[.]"
 
 State v. Minor
 
 ,
 
 290 N.C. 68
 
 , 73,
 
 224 S.E.2d 180
 
 , 184 (1976).
 

 The State's evidence shows that defendant entered Manna Baptist Church at the relevant time and that items were stolen from the church
 
 *769
 
 sometime between Wednesday, 15 August and Sunday, 19 August 2012. The stolen items were never found. Defendant argues that the State's case relies entirely upon circumstantial evidence of defendant's opportunity to take the items, since the evidence shows only that he was in the church. The State's evidence fails to show a motive for defendant to take the sound equipment. It fails to show how defendant could have carried or disposed of these rather large items during the night of August 15 while he was walking down the road.
 
 See, e.g.,
 

 Minor
 
 ,
 
 id.
 
 at 75,
 
 224 S.E.2d at 185
 
 ("The most the State has shown is that defendant had been in an area where he could have committed the crimes charged. Beyond that we must sail in a sea of conjecture and surmise. This we are not permitted to do. The trial judge should have allowed the motion for judgment as of nonsuit at the close of defendant's evidence.").
 

 In
 
 Minor
 
 , the defendant was convicted of "possession of a controlled substance, to-wit, marijuana, for the purpose of distribution, and with manufacturing and growing marijuana."
 
 Id.
 
 at 68,
 
 224 S.E.2d at 181
 
 . Both Minor and a co-defendant, Ingram, were charged with various crimes based upon marijuana plants growing in an isolated corn field.
 
 Id
 
 . at 68-69,
 
 224 S.E.2d at 181-82
 
 . When they were stopped and arrested near the field, Minor was riding a car owned and driven by Ingram.
 
 Id
 
 . at 69,
 
 224 S.E.2d at 182
 
 . Police found two guns, some wilted marijuana leaves and some grains of fertilizer in the car; only Ingram was charged for possession of the weapons but both defendants were charged regarding the marijuana.
 
 Id
 
 . Ingram had secured the consent of the landowner to use the field where the marijuana was growing.
 
 Id
 
 . The State's evidence also showed that Minor had assisted in preparing the land for "a garden" in the same area.
 
 Id
 
 . at 70,
 
 224 S.E.2d at 182
 
 . The Supreme Court summarized the evidence against Mr. Minor:
 

 *822
 
 About all our evidence shows is (1) that defendant Minor had been a visitor at an abandoned house leased or controlled by co-defendant Ingram; (2) that the marijuana field was 100 feet away from the house but obscured by a wooded area; (3) that the marijuana field was accessible by three different routes; (4) that on the date of Minor's arrest he was on the front seat of a Volkswagen automobile owned and operated by Ingram, where some wilted marijuana leaves were found on the left rear floorboard and one marijuana leaf was found in the trunk.
 

 Id.
 
 at 74-75,
 
 224 S.E.2d at 185
 
 .
 

 *770
 
 The State seeks to distinguish
 
 Minor
 
 by arguing that "the facts in this case are distinguishable from
 
 State v. Minor
 
 .
 
 Minor
 
 involved actual or constructive possession of narcotics." The State is correct that the defendant in
 
 Minor
 
 was charged with possession of narcotics, but that factual difference is not controlling. In
 
 Minor
 
 , the State was relying solely upon evidence that the defendant was in a particular place at a particular time to show he possessed marijuana; here, the State is relying solely upon evidence that defendant was in Manna Baptist Church during a four-day time period when the stolen items were taken to show he possessed those items and removed them. The evidence against the defendant in
 
 Minor
 
 was stronger than here, since Mr. Minor was at least in a vehicle where some fresh marijuana was found, and he was riding with the person with control of the property upon which the marijuana was growing.
 
 Id
 
 . at 69,
 
 224 S.E.2d at 182
 
 . Here, the State is relying on defendant's presence alone to show he took and carried away the sound equipment, since the "elements of larceny are that defendant (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to permanently deprive the owner of the property."
 
 State v. Coats
 
 ,
 
 74 N.C.App. 110
 
 , 112,
 
 327 S.E.2d 298
 
 , 300 (1985.) Like
 
 Minor
 
 , the State's evidence shows that defendant was "in an area where he could have committed the crimes charged," but beyond that, we also must "sail in a sea of conjecture[.]"
 
 Minor
 
 ,
 
 290 N.C. at 75
 
 ,
 
 224 S.E.2d at 185
 
 .
 

 In
 
 Campbell SC I
 
 , the Supreme Court held that "the State presented sufficient evidence of defendant's criminal intent to sustain a conviction for felony breaking or entering a place of religious worship [with intent to commit a larceny therein.]"
 
 Campbell SC I
 
 , 368 N.C. at 88, 772 S.E.2d at 444-45. In so concluding, the Supreme Court explained:
 

 Defendant was charged under N.C.G.S. § 14-54.1(a) with wrongfully breaking or entering Manna Baptist Church
 
 with intent to commit a larceny therein
 
 . To meet its burden, the State must offer substantial evidence that defendant broke or entered the building with the requisite criminal intent. In
 
 State v. Bell
 
 we explained:
 

 Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. "The intent with which an accused broke and entered may be found by the jury from evidence as to what he did within the [building]. ... However, the fact that a felony was actually committed after the [building] was entered is not necessarily proof
 
 *771
 
 of the intent requisite for the crime of [larceny]. It is only evidence from which such intent at the time of the breaking and entering may be found. Conversely, actual commission of the felony ... is not required in order to sustain a conviction of [larceny]."
 

 285 N.C. 746
 
 , 750,
 
 208 S.E.2d 506
 
 , 508 (1974) (second alteration in original) (citations omitted).
 

 Here evidence showed that defendant unlawfully broke and entered Manna Baptist Church late at night.
 
 See
 

 State v. Sweezy
 
 ,
 
 291 N.C. 366
 
 , 383,
 
 230 S.E.2d 524
 
 , 535 (1976) ("It is well established that the mere pushing or pulling open of an unlocked door constitutes a breaking."). Defendant did not have permission to be inside the church and could not remember what he did while there, and Pastor Stevens found defendant's wallet near the place where some of the missing equipment previously had been stored. Considered in the light most favorable to the State, this evidence was
 
 *823
 
 sufficient to take the case to the jury on the question of defendant's intent to commit larceny when he broke and entered Manna Baptist Church. Therefore, the trial court properly denied defendant's motion to dismiss the breaking or entering charge for insufficient evidence.
 

 Campbell SC I
 
 , 368 N.C. at 87-88, 772 S.E.2d at 444.
 

 Our Supreme Court's holding in
 
 Campbell SC I
 
 does not preclude our conclusion that there was insufficient evidence of larceny, as the Supreme Court's holding does not go to the element at question, whether there was sufficient evidence that defendant took and carried away the property of another-the sound equipment. While our determination of this issue is unnecessary since we have concluded that defendant's conviction for larceny must be vacated due to a fatal variance between the indictment and evidence, we note this determination in the alternative and to resolve the remaining issues in this case.
 

 ii. (6.) Unanimous verdict
 

 Defendant's last argument is that the trial court erred by instructing the jury it could find the defendant guilty of larceny if it determined he "took property belonging to another." Defendant contends that since he was charged with larceny of property belonging to "Andy Stevens and Manna Baptist Church," the instruction was disjunctive because the jury could have found
 

 *772
 
 four possible verdicts: 1) guilty of larceny of the property of Andy Stevens; 2) guilty of larceny of the property of Manna Baptist Church; 3) guilty of larceny of the property of both Andy Stevens and Manna Baptist Church; or 4) guilty of larceny of the property of Andy Stevens in the view of some jurors, while guilty of larceny of the property of Manna Baptist Church in the view of others.
 

 The State simply argues that the instructions were not disjunctive since they did not identify an alleged owner of the properly taken, but only instructed general that larceny is taking property of "another." But Defendant's argument on a disjunctive verdict addresses essentially the same problem as his argument above, in Issue (4), that there was a fatal variance between the evidence presented and the indictment. We need not address this issue further since we have ruled in defendant's favor on Issue (4) and vacated the larceny conviction.
 

 V. Conclusion
 

 We have elected to invoke our discretion under Rule 2 to address defendant's arguments regarding fatal variance for the reasons above, and we hold that the trial court erred in failing to dismiss the larceny charge due to a fatal variance between the indictment and the evidence presented regarding ownership of the property. We remand for entry of judgment in accord with this opinion and resentencing solely on the remaining breaking and entering offense.
 

 VACATED AND REMANDED.
 

 Judge ARROWOOD concurs.
 

 Judge BERGER dissents in separate opinion.
 

 BERGER, Judge, dissenting in separate opinion.
 

 Because Rule 2 is not a mechanism to right all perceived wrongs, but instead, a tool to be used only in rare circumstances, there was substantial evidence of Defendant's guilt, and Defendant has not demonstrated that the larceny instruction had a probable impact on the jury's verdict, I respectfully dissent.
 

 Rule 2 states:
 

 To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate
 
 *773
 
 division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.
 

 N.C.R. App. P. 2.
 

 The North Carolina Supreme Court provided straightforward direction for this Court to conduct a proper assessment of whether we should invoke Rule 2 in this case to determine if a variance existed between the indictment for larceny after breaking or entering,
 
 *824
 
 and the evidence presented at trial.
 
 State v. Campbell
 
 ,
 
 369 N.C. 599
 
 ,
 
 799 S.E.2d 600
 
 (2017). In remanding this case, our Supreme Court emphasized Rule 2 should only be utilized "
 
 in exceptional circumstances
 
 ."
 
 Id
 
 . at 603, 799 S.E.2d at 602. (emphasis in original). In determining whether this Court should exercise its discretion under Rule 2, we were instructed to look at "the
 
 specific circumstances of individual cases and parties
 
 ," including, but not limited to, whether substantial rights are affected, the "
 
 gravity of the offense
 
 [ ]," and the penalty imposed.
 
 Id.
 
 at 603, 799 S.E.2d at 602-03 (emphasis in original) (citations omitted). Significantly, our Supreme Court stated that "precedent cannot create an automatic right to review."
 
 Id.
 
 at 603, 799 S.E.2d at 603.
 

 The majority, however, delves into an exhaustive discussion of "Cases Addressing Rule 2 Review of Fatal Variance Issues," and bases its decision on the purported similarities of this case to
 
 State v. Gayton-Barbosa
 
 ,
 
 197 N.C.App. 129
 
 ,
 
 676 S.E.2d 586
 
 (2009). While the Supreme Court cited
 
 Gayton-Barbosa
 
 as a case that engaged in an appropriate Rule 2 analysis, the majority has declined to engage in the individualized, case-specific analysis directed by
 
 Campbell
 
 .
 

 The question is not whether a "defendant has presented a viable argument of a fatal variance and insufficiency of the evidence" as the majority has stated. The fact that there may be a variance is not determinative. The majority places the cart before the horse: because there is a variance, we must invoke Rule 2. Under the majority's analysis, there would never be a case in which a variance existed and this Court could decline to exercise its discretion. Such a result seems contrary to the text of Rule 2, and the Supreme Court's view of Rule 2 as a rare and exceptional judicial tool.
 

 In
 
 Campbell
 
 , the Supreme Court set forth three factors for us to consider when determining whether or not we should use our discretion and invoke Rule 2 : (1) whether substantial rights are affected, (2) the
 
 *774
 
 "gravity of the offense," and (3) the penalty imposed. Each of these factors is addressed below.
 

 While a deficient indictment certainly may affect substantial rights of a defendant, "contemporary criminal pleading requirements have been designed to remove from our law unnecessary technicalities which tend to obstruct justice."
 
 State v. Williams
 
 ,
 
 368 N.C 620
 
 , 623,
 
 781 S.E.2d 268
 
 , 271 (2016) (citation and quotation marks omitted).
 

 An indictment must set forth
 

 [a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.
 

 N.C. Gen. Stat. § 15A-924(a)(5) (2017). "An indictment ... is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense[,] ... protect[s] him from subsequent prosecution for the same offense[, and] ... enable[s] the court to know what judgment to pronounce in the event of conviction."
 
 State v. Coker
 
 ,
 
 312 N.C. 432
 
 , 434-35,
 
 323 S.E.2d 343
 
 , 346 (1984) (citations omitted). An indictment is "sufficient in form for all intents and purposes if it express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment."
 
 N.C. Gen. Stat. § 15-153
 
 (2017).
 

 This is not a case in which Defendant is alleging a jurisdictional defect in the indictment. Further, Defendant has not asserted that the indictment failed to allege information sufficient to enable him to prepare a defense, or afford him double jeopardy protection. In essence, Defendant complains that the indictment sets forth too much information based upon the State's evidence at trial.
 

 Moreover, "a variance-based challenge is, essentially, a contention that the evidence is insufficient to support a conviction."
 
 Gayton-Barbosa
 
 ,
 
 197 N.C.App. at 134
 
 ,
 
 676 S.E.2d at 590
 
 . It is important to note that in
 
 Gayton-Barbosa
 

 *825
 
 , the case so heavily relied on by the majority, the defendant was charged with two felony assaults, felony breaking or entering, felony larceny, first degree kidnapping, and possession of a firearm by a convicted felon.
 
 Id.
 
 at 131,
 
 676 S.E.2d at 588
 
 . The indictment
 
 *775
 
 for felony larceny incorrectly named the owner of the stolen firearm, but the defendant failed to adequately preserve the issue for appellate review. This Court stated that "it is difficult to contemplate a more 'manifest injustice' to a convicted defendant than that which would result from sustaining a conviction that
 
 lacked adequate evidentiary support
 
 , particularly when leaving the error in question unaddressed has double jeopardy implications."
 
 Id.
 
 at 135,
 
 676 S.E.2d at 590
 
 (emphasis added).
 

 Here, it is uncontroverted that the larceny indictment alleged ownership of the stolen property in Manna Baptist Church along with a second purported owner, Pastor Andy Stevens, while the evidence presented only established ownership in Manna Baptist Church. Defendant's complaint over what boils down to an indictment-related issue involves "less serious defects,"
 
 State v. Brice
 
 ,
 
 370 N.C. 244
 
 , 249,
 
 806 S.E.2d 32
 
 , 36 (2017), and not substantial rights. One could argue it is one of those "unnecessary technicalities which tend to obstruct justice."
 
 Williams
 
 , 368 N.C. at 623,
 
 781 S.E.2d at 271
 
 (citation and internal quotation marks omitted).
 

 The indictment charging Defendant with larceny after breaking or entering does not implicate jurisdictional concerns, lack of adequate notice, or double jeopardy exposure. The evidence at trial showed that a purported owner listed in the indictment was the actual owner of the property stolen. Defendant's substantial rights were not affected, thus the invocation of Rule 2 is not warranted based on this factor.
 

 Similarly, the second and third factors do not support a Rule 2 review by this Court. After a Cleveland County jury found Defendant guilty of breaking or entering a house of worship and larceny after breaking or entering, the trial court consolidated the charges for judgment, and Defendant was sentenced to a presumptive-range sentence that included special probation. Larceny-related offenses cause serious, negative impacts to our communities, and a single felony conviction can be detrimental for defendants. However, it cannot be said that the "gravity" of this offense and the punishment involved are such that we should suspend appellate rules. Therefore, pursuant to the facts and circumstances of this case, I would not employ Rule 2 to suspend the appellate rules in order to reach the merits of this case.
 

 Additional Issues
 

 The majority finds that the trial court erred in denying Defendant's motion to dismiss and in instructing the jury. Both arguments involve the larceny after breaking or entering conviction. I respectfully disagree on both issues.
 

 *776
 
 Evidence presented at trial tended to show that Pastor Andy Stevens arrived at Manna Baptist Church on the morning of August 19, 2012. At the end of service that day, he noticed some of the sound equipment was missing. Stevens estimated the value of the equipment was approximately $500.00. While looking through the building, a wallet was located with various sound equipment near the front of the church. The wallet contained Defendant's social security card and North Carolina driver's license. The incident was investigated by the Cleveland County Sheriff's Department.
 

 Defendant was incarcerated in the Cleveland County Detention Center on an unrelated charge at the time the initial report was received by the detective division. Detective Jessica Woosley went to the jail to interview Defendant, and as he was being escorted to meet the detective, Defendant stated, "[T]his can't possibly be good. What have [I] done now that I don't remember?" Detective Woosley read Defendant his
 
 Miranda
 
 rights, and he requested an attorney. Detective Woosley ceased questioning, but Defendant pointed to her "Manna Baptist Church" case file that was on the desk, and stated that he remembered being there while on a spiritual journey, but could not remember what had taken place.
 

 Defendant testified at trial that he entered Manna Baptist Church on the night the incident occurred and took a bottle of water.
 

 *826
 
 Defendant admitted that he had a black duffle bag with him that night, but he dumped the duffle bag in a ditch because it was "too heavy and just too cumbersome ... to carry all the way to where [he] was going."
 

 A Cleveland County jury found Defendant guilty of breaking or entering a house of worship and larceny pursuant to breaking or entering. As stated above, Defendant received a sentence of Special Probation.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. J. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citation omitted). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' "
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (quoting
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. L. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980) (citations omitted). "In making its determination, the trial court must consider all evidence
 
 *777
 
 admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995) (citation omitted).
 

 Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.
 

 Fritsch
 
 ,
 
 351 N.C. at 379
 
 ,
 
 526 S.E.2d at 455
 
 (citations, quotation marks, and brackets omitted).
 

 A defendant may be properly convicted of larceny where the evidence establishes that the defendant has taken the property of another, carried it away, without consent of the owner, and with the intent to deprive the owner of the property permanently.
 
 State v. Barbour
 
 ,
 
 153 N.C.App. 500
 
 , 502,
 
 570 S.E.2d 126
 
 , 127 (2002) (citation omitted). When viewed in the light most favorable to the state, there was substantial evidence that Defendant committed larceny pursuant to breaking or entering Manna Baptist Church. Defendant admitted he was in the church at or near the time the property was stolen, and could not recall what had taken place while he was there. Further, the jury could reasonably infer that he left either in haste, or while preoccupied, because his wallet was found in the church in an area where some of the sound equipment was located. Also, Defendant admitted to abandoning a duffle bag around the time the incident occurred because it was too heavy and too cumbersome. This circumstantial evidence, together with Defendant's statements at the jail facility that "this can't possibly be good" and "[w]hat have [I] done now that I don't remember," allowed the trial court to determine that there was in fact a reasonable inference of Defendant's guilt, and it was for the jury to determine if Defendant was guilty. Thus, I would find no error as there was sufficient evidence of larceny.
 

 Finally, Defendant asserts that the trial court's disjunctive instruction was erroneous because it violated jury unanimity. The majority
 
 *778
 
 declines to address this argument, stating that "Defendant's argument on a disjunctive verdict addresses essentially the same problem as his argument ... that there was a fatal variance[.]" While I agree with this statement, I disagree with the result.
 

 "A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that
 
 *827
 
 to which objection is made and the grounds of the objection...." N.C.R. App. P. 10(a)(2). "To have an alleged error reviewed under the plain error standard, the defendant must specifically and distinctly contend that the alleged error constitutes plain error."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 516,
 
 723 S.E.2d 326
 
 , 333 (2012) (citation and quotation marks omitted).
 
 See also
 

 State v. Boyd
 
 ,
 
 222 N.C.App 160
 
 ,
 
 730 S.E.2d 193
 
 (2012),
 
 rev'd for the reasons stated in the dissenting opinion
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013) (per curiam) (plain error review applies to an unpreserved error concerning a jury instruction for which there was no evidence).
 

 To establish plain error,
 

 a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.
 

 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (citation and quotation marks omitted). Defendant here has not argued prejudice, and cannot establish prejudice.
 

 The trial court instructed the jury that in order to find Defendant guilty of felony larceny,
 

 the State must prove six things beyond a reasonable doubt.
 

 First, that the defendant took
 
 property belonging to another
 
 ;
 

 Second, that the defendant carried away the property;
 

 Third, that
 
 the victim did not consent
 
 to the taking and carrying away of the property;
 

 Fourth, that at the time of the taking, the defendant intended to deprive
 
 the victim
 
 of its use permanently;
 

 Fifth, that the defendant knew he was not entitled to take the property;
 

 *779
 
 And sixth, that the property was taken from a building after a breaking or entering.
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant took and carried away
 
 another person's property
 
 without the
 
 victim's
 
 consent from the building after a breaking or entering-and in this case, [ ] an entry-knowing that he was not entitled to take it and intending at the time of the taking to deprive the
 
 victim
 
 of its use permanently, it would be your duty to return a verdict of guilt.
 

 If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
 

 (Emphasis added).
 

 Even if we assume there was an error in the instruction, Defendant has not and cannot demonstrate "that, absent the error, the jury probably would have returned a different verdict. ... In addition, the error in no way seriously affects the fairness, integrity, or public reputation of judicial proceedings."
 
 Lawrence
 
 ,
 
 365 N.C. at 519
 
 ,
 
 723 S.E.2d at 335
 
 . The inclusion of 'Andy Stevens' in the indictment along with the purported error in jury instructions, "under the facts of this particular case, make no difference at all in the result."
 
 Boyd
 
 ,
 
 222 N.C.App at 173
 
 ,
 
 730 S.E.2d at 201
 
 . Manna Baptist Church was listed on the indictment, and the evidence at trial showed it was the owner of the property.
 

 Conclusion
 

 For the reasons stated herein, Rule 2 is a tool to be used only in rare circumstances, and should not be invoked in this case. Furthermore, there was substantial evidence of Defendant's guilt, and Defendant has failed to demonstrate that the larceny instruction had a probable impact on the jury's verdict. Defendant received a fair trial free from prejudicial error, and the jury's verdict should be upheld.
 

 [1]
 

 Although citation of unpublished cases is disfavored under N.C. R. App. P. 30(e)(3) and such cases do not constitute controlling legal authority, we have reviewed both published and unpublished cases in the interest of understanding this Court's approaches to these cases and uniformity of treatment of similarly-situated cases. We are not citing unpublished cases as binding precedent.
 

 [2]
 

 We also note we are bound to follow the cases from the Supreme Court (as cited in our prior opinion and quoted here) which hold that where a larceny indictment identifies two owners of the stolen property, the State must present evidence that both of the alleged owners had an ownership interest or special property interest in the stolen property. We agree that this requirement may be an "unnecessary technicality," as our dissenting colleague notes, but we have no choice but to follow precedent set by the North Carolina Supreme Court. If there is no facial invalidity of the indictment which identifies two owners of the stolen property, as is true here, there seems to be no reason to require dismissal of a case if the State presents evidence that at least one of the alleged owners did own the property, even if the other did not. It would appear that defendant would be protected from double jeopardy by the fact that he had already been tried for larceny of the property from both alleged owners, even if only one of the alleged owners owned the property. But we are bound to follow the law, going back to at least 1878.