IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-5

No. COA21-212

Filed 4 January 2022

Buncombe County, No. 19 CRS 80531

STATE OF NORTH CAROLINA

v.

ZENA MARIE REDMOND, Defendant.

Appeal by Defendant from judgment entered 18 December 2019 by Judge Alan Z. Thornburg in Buncombe County Superior Court. Heard in the Court of Appeals 17 November 2021.

*Attorney General Joshua H. Stein, by Associate Attorney General Brian M. Miller, for the State.*

*Carella Legal Services, PLLC, by John F. Carella, for the Defendant.*

GRIFFIN, Judge.

¶ 1 Defendant Zena Marie Redmond, appeals from the trial court's judgment entering a jury verdict finding her guilty of misdemeanor injury to personal property with a value in excess of $200. Defendant argues the trial court erred by: (1) denying her motion to dismiss based on a fatal variance between the charging document and the evidence presented at trial; and (2) ordering that she pay restitution in an amount based only on speculative values. We discern no error.

## I.    Factual and Procedural Background

This case arises from damage done to a painting in protest of the painter's alleged bad acts. On 12 January 2019, a magistrate judge entered an order charging Defendant with injury to personal property in excess of $200 and resisting arrest by a public officer. On 23 October 2019, Defendant was tried and found guilty of both charges in district court. Defendant appealed to superior court for a jury trial. Evidence presented during the proceedings in superior court tended to show as follows:

On 12 January 2019, painter Jonas Gerard held a live painting performance at the Jonas Gerard Fine Arts Gallery in Asheville. Gerard regularly held these performances on the second Saturday of every month. During these performances, Gerard would typically paint a few paintings over the course of around three hours. Once the paintings were dry, they would be titled, catalogued, posted on the gallery's sales website, and moved out onto the Gallery's sales floor.

On the morning of January 12, staff at the Jonas Gerard Fine Arts Gallery "heard rumors that there was going to be a protest outside of the building" and discovered a "blackish tar substance" and "busted balloons all over [the] front foyer, front door." Mr. Luzader, an employee who assisted Gerard on stage that day, testified that he "made a point that day to scan the crowd" during the performance and that he was on "high alert because [they] had heard rumors of the protestors." A "section in the crowd caught [Mr. Luzader's] attention a couple times" because "[t]hey

looked like they didn't want to be there, they weren't enjoying [the performance]." Mr. Luzader identified Defendant as part of that section in the crowd.

¶ 5      After the performance, Gerard answered questions and invited the audience onto the stage to examine the last painting.  Gerard stepped away from the painting to mingle with the audience.  Mr. Luzader testified that he saw Defendant standing near an exit door, partially concealed by a partition.  Defendant was looking back and forth at Mr. Luzader and the paintings in the room.  Then Mr. Luzader "heard a commotion and some lady screamed[ a]nd about that time a balloon came and hit [him] on [his] foot."  Mr. Brasington, another gallery employee, testified that he was assisting a woman who had expressed a desire to purchase the painting when the commotion occurred.  Mr. Brasington stated that, when "[I and the buyer] got back to the sales desk, I looked back and I saw [Defendant] unleash at least one balloon, if not two" from behind the partition.  Mr. Luzader added that, after the event, the painting had "this huge black ink stain in the middle of it that [took] up pretty much the whole painting" and was "still wet with black ink."

¶ 6      Mr. Luzader "looked up and saw [Defendant] run out the exit door."  A police officer working event security called for back-up and pursued Defendant out of the gallery and into the street.  The responding officers ultimately detained Defendant and an accomplice.  At that time, Defendant "had a black mark on her hand and some black paint [on her] as well", and was carrying "a balloon filled with black paint" in

her purse.

At the close of the State's evidence, Defendant moved to dismiss the charge of injury to personal property. The court denied Defendant's motion. Defendant did not present evidence at trial. The jury found Defendant guilty of misdemeanor injury to personal property with a value in excess of $200. The superior court sentenced Defendant to thirty days in the custody of the county sheriff, then suspended that sentence and placed Defendant on eighteen months of supervised probation. The trial court also ordered that Defendant pay $4,425.00 in restitution for the damaged painting, over Defendant's objection to the amount. Defendant gave timely written notice of appeal.

## II.     Analysis

Defendant makes two arguments on appeal: (1) the trial court should have dismissed the charge of injury to personal property due to a fatal variance; and (2) the trial court ordered restitution based upon speculative values.

### A. Fatal Variance in Ownership Evidence

Defendant contends the "trial court erred by denying [her] motion to dismiss based on a fatal variance between the charging document and the State's evidence at trial regarding ownership of the damaged painting." Our Courts review motions to dismiss to determine whether, in the light most favorable to the State, there was substantial evidence of each essential element of the crime charged and whether the

defendant was the perpetrator of the offense. *State v. Craycraft*, 152 N.C. App. 211, 213, 567 S.E.2d 206, 208 (2002) (citations omitted).

¶ 10     "[A] challenge to a fatal variance between the [charging document] and proof is made by motion to dismiss for insufficiency of the evidence in the trial court." *State v. Jones*, 223 N.C. App. 487, 496, 734 S.E.2d 617, 624 (2012) (citations and quotation marks omitted), *aff'd*, 367 N.C. 299, 758 S.E.2d 345 (2014). "It has long been the law of this state that a defendant must be convicted, if convicted at all, of the particular offense charged in the [charging document]." *State v. Faircloth*, 297 N.C. 100, 107, 253 S.E.2d 890, 894 (1979). "A variance occurs where the allegations in [the charging document], although they may be sufficiently specific on their face, do not conform to the evidence actually established at trial." *State v. Norman*, 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002) (citation omitted). To prevail on a motion to dismiss for fatal variance, "the defendant must show a fatal variance between the offense charged and the proof as to [t]he gist of the offense", meaning that the State's evidence contained "a variance regarding an essential element of the offense." *State v. Pickens*, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997) (citations and quotation marks omitted).

¶ 11     Under N.C. Gen. Stat. § 14-160, "if any person shall wantonly and willfully injure the personal property of another, causing damage in an amount in excess of two hundred dollars ($200.00), [s]he shall be guilty of a Class 1 misdemeanor." N.C.

Gen. Stat. § 14-160(b) (2019). "The identity of the owner of the property that the defendant allegedly injured is a material element of the offense of injury to personal property." *State v. Ellis*, 368 N.C. 342, 344–45, 776 S.E.2d 675, 677 (2015) (citations and quotation marks omitted). "[A] criminal pleading seeking to charge the commission of crimes involving theft of or damage to personal property, including injury to personal property, must allege ownership of the property in a person, corporation, or other legal entity capable of owning property." *Id.* The charging document for injury to personal property "must allege a person who has a property interest in the property [injured,] and . . . the State must prove that that person has ownership, meaning title to the property or some special property interest." *See State v. Greene*, 289 N.C. 578, 584, 223 S.E.2d 365, 369 (1976).

¶ 12    The magistrate's charging order in this case stated:

> [T]here is probable cause to believe that . . . [Defendant] named above unlawfully and willfully did wantonly injure personal property, A PAINTING, the property of JONAS GERARD. The damage caused was in excess of $200.00.

¶ 13    Defendant contends that although the charging document alleges the painting was "the property of Jonas Gerard", the State's evidence at trial showed that the painting was actually owned by Gerard's corporation, Jonas Gerard Fine Arts, Inc. ("JGFAI"). Additional evidence presented at trial showed that the damaged painting was owned by JGFAI, an S-corporation held in a revocable trust, and that Gerard

was both an employee of JGFAI and the sole owner of JGFAI. Therefore, record evidence in this case shows that "Jonas Gerard" and "Jonas Gerard Fine Arts, Inc.," are separate legal persons or entities, each of which is capable of owning property.

¶ 14 Nonetheless, the State presented sufficient evidence that Gerard otherwise had a "special property interest" in the painting. In reaching our holding in this case, we evaluate cases regarding the crime of injury to personal property as well as the crime of larceny. North Carolina case law has acknowledged that these crimes share the requirement that the State allege the owner of injured or stolen property. *Ellis*, 368 N.C. at 344–45, 776 S.E.2d at 677; *State v. Cave*, 174 N.C. App. 580, 582, 621 S.E.2d 299, 301 (2005) ("To convict a defendant of injury to *personal property or larceny*, the State must prove that the personal property was that 'of another,' i.e., someone other than the person or persons accused." (emphasis added)); *State v. Price*, 170 N.C. App. 672, 673, 613 S.E.2d 60, 62 (2005). In application, larceny and injury to personal property both arise from a defendant's acts which deprive the owner of the use and enjoyment of their personal property. The breadth of our state's precedent defining "special property interests" that properly allege ownership appears in cases of larceny.

¶ 15 "[T]he person named in the indictment may be either the person having a 'general interest' in the . . . property—that is, the actual owner—or the person with a 'special interest' in the property—that is, the person who had possession and control

of it at the time when it was stolen [or damaged]." *State v. Carr*, 21 N.C. App. 470, 472, 204 S.E.2d 892, 894 (1974); *see State v. Campbell*, 257 N.C. App. 739, 761, 810 S.E.2d 803, 817 (2018), *aff'd as modified*, 373 N.C. 216, 835 S.E.2d 844 (2019) (exploring cases of joint possession, parental responsibility, and bailee/custodian relationships which Courts have held to be "special property interests"). In *Carr*, record evidence showed that a stolen vehicle was actually owned by an electronics business, while the charging document alleged the car was property owned by the business owner's son. *Id.* at 472, 204 S.E.2d at 894. However, the son "regarded [the vehicle] as his car, took it to college with him, and was in possession of it at all times." *Id.* at 471, 204 S.E.2d at 893. This Court held that, based upon this evidence, "it [was] clear that [the son] had a special interest in the stolen automobile." *Id.* at 472, 204 S.E.2d at 894.

¶ 16        Conversely, in *Campbell*, this Court reiterated the rule that "an employee in possession of property on behalf of the employer does not have a sufficient ownership interest in the property" to allege ownership in a charging document. *Campbell*, 257 N.C. App. at 764, 810 S.E.2d at 819. In *Campbell*, the defendant stole audio equipment which belonged only to a church, but the indictment alleged that the equipment was also the property of the church's pastor. *Id.* at 762–64, 810 S.E.2d at 818–19. The evidence showed only that the pastor worked at the church, lived on church property, and benefitted from others' use of the audio equipment in his work;

the pastor had no responsibility for or control over the stolen audio equipment. *Id.* The *Campbell* Court held this evidence "did not show that [the pastor] had any special property interest in the stolen items." *Id.* at 766, 810 S.E.2d at 819.

¶ 17 Gerard's relationship to his paintings is similar to the ownership analysis in *Carr*. Record evidence showed that Gerard had authority to use materials owned by JGFAI to create paintings and did so at least once per month. Gerard had actual possession of the damaged painting throughout its creation and walked away from the painting to discuss his work with audience members shortly before the painting was damaged. Though a buyer had expressed interest in this particular painting, evidence showed that Gerard had not yet finished the painting: the painting's ink had not settled, it had not yet been named, and it had not yet been catalogued or added to the sales floor. Even after a painting is catalogued and posted for sale in the gallery, testimony showed that Gerard retained the right to revisit his finished creations and to alter or improve them if he felt they needed "a little more love." JGFAI employed Gerard for the purpose of creating paintings and granted him control over new and finished paintings. Though they were distinct legal entities, Gerard regarded himself and JGFAI as one and the same and certainly held out the paintings as his own. It is clear from the record that Gerard had a special property interest in the paintings he created for JGFAI.

¶ 18 The allegation of ownership by Gerard in the charging order was sufficient to

notify Defendant of the particular piece of personal property which she was alleged to have damaged. *See State v. Spivey*, 368 N.C. 739, 743–44, 782 S.E.2d 872, 875 (2016) ("A description of the owner of personal property is useful to differentiate between two similar pieces of personal property, thereby notifying the defendant of the particular transaction on which the indictment is founded and giv[ing] the [defendant] the benefit of the first acquittal or conviction if accused a second time of the same offense." (citation and internal quotation marks omitted)). The trial court did not err by denying Defendant's motion to dismiss because there was no fatal variance between the charging order and the evidence presented at trial.

**B. Evidence Supporting Restitution**

¶ 19        Defendant next argues the "trial court erred by ordering Defendant to pay $4,425 in restitution by speculating the value of an unsold painting."

¶ 20        "On appeal, we review *de novo* whether the restitution order was supported by evidence adduced at trial or at sentencing." *State v. Wright*, 212 N.C. App. 640, 645, 711 S.E.2d 797, 801 (2011). "In determining the amount of restitution, the court shall consider . . . [i]n the case of an offense resulting in the damage, loss, or destruction of property of a victim of the offense . . . [t]he value of the property on the date of the damage, loss, or destruction[.]" N.C. Gen. Stat. § 15A-1340.35(a)(2)(b)(1) (2019).

¶ 21        "[T]he quantum of evidence needed to support a restitution award is not high." *State v. Moore*, 365 N.C. 283, 285, 715 S.E.2d 847, 849 (2011). "Prior case law reveals

two general approaches: (1) when there is no evidence, documentary or testimonial, to support the award, the award will be vacated, and (2) when there is specific testimony or documentation to support the award, the award will not be disturbed." *Id.*; *see State v. Cousart*, 182 N.C. App. 150, 154, 641 S.E.2d 372, 375 (2007) (holding restitution award was adequately supported by victim's testimony that stolen stereo was purchased for $787.00); *State v. Price*, 118 N.C. App. 212, 221, 454 S.E.2d 820, 826 (1995) (holding victim's testimony that, due to the defendant's conduct, "he had to purchase a special van costing $19,900 and that he had incurred $1,000 in medical expenses" supported restitution award); *cf. Moore*, 365 N.C. at 285–86, 715 S.E.2d at 849 (remanding for additional determinations on restitution because testimony "that the estimate for repairs was '[t]hirty-something thousand dollars'" was "not specific enough to support the award of $39,332.49").

¶ 22     Here, Mr. Brasington testified that a buyer was interested in the painting and in discussions with sales staff to purchase the painting at the time it was damaged. This buyer asked Gerard during the performance how much the painting would cost, to which Gerard replied "$8,850.00." Mr. Brasington further testified that $8,850.00 was the gallery's base price for all paintings of this size. Gerard testified at trial that he sometimes painted over or added to his paintings, but he could not paint over the black ink stain or reuse the damaged painting in any way because the canvas was "destroyed completely." Based upon this evidence, and evidence that Defendant was

assisted by an accomplice, the trial court ordered that Defendant pay $4,425.00—half the value of the damaged painting—in restitution.

¶ 23        Contrary to Defendant's assertions, the fact that the specific, damaged item had not yet been purchased by a buyer does not mean that the market value assigned by the trial court for restitution was speculative. In *State v. Freeman*, this Court used the sale price of substantially similar lumber from another parcel to determine the amount of restitution awarded for unsold timber illegally cut from the victim's property. *State v. Freeman*, 164 N.C. App. 673, 678, 596 S.E.2d 319, 322–23 (2004); *see also Kaplan v. City of Winston-Salem*, 286 N.C. 80, 83, 209 S.E.2d 743, 746 (1974) ("According to the decided cases in North Carolina, '[t]he measure of damages for injury to personal property is the difference between the market value immediately before the injury and the market value immediately after the injury.'"). In the present case, it was proper for the trial court to consider the base rate for which Gerard's paintings of the same or similar size are sold. The evidence adduced at trial was sufficiently specific to show the market value of the painting prior to damage by Defendant on the date of loss, damage, or destruction, and therefore we will not disturb the trial court's award.

### III.    Conclusion

¶ 24        We hold the trial court did not err by denying Defendant's motion to dismiss the charge of injury to personal property. The charging order and the evidence at

trial showed that Jonas Gerard had a special property interest in the painting. The trial court also did not err by ordering Defendant to pay $4,425.00 as restitution. The State presented sufficient evidence of the market value of the damaged painting.

NO ERROR.

Judges DIETZ  and TYSON concur.